IN THE MATTER OF THE PETITION OF THE GILBERT ELEVATED RAILWAY COMPANY TO ACQUIRE TITLE TO LANDS IN THE CITY OF NEW YORK, Respondent, v. CATHARINE M. KOBBE, Appellant.

IN SAME MATTER v. EDWARD HANDERSON et al., Appellants.

Section 36 of the Rapid-Transit Act, so-called (chap. 606, Laws of 1875), authorizing any existing corporation, which has not forfeited its charter, or failed to comply with its provisions, whose route or routes coincide with those determined upon by the commissioners appointed under said act, to construct and operate its railway thereon upon fulfillment of the requirements of the act, is not violative of the constitutional provisions (art 3, § 18) prohibiting the passage of a private or local bill granting to any corporation the right to lay down railroad tracks, or granting to it any exclusive privilege, immunity or franchise.

The clause prohibiting the grant of a right to lay down railroad tracks was designed to prohibit an original and independent grant of such right, including the powers incident thereto. This right cannot be granted under the guise of an amendment to an existing charter, any more than by original grant. But an act restricting and regulating an existing right to lay down railroad tracks, is not a grant of that right, within the meaning of said provision.

It is not necessary under said section of the Rapid-Transit Act that the routes designated by the commissioners should coincide with all the routes of an existing corporation. If any of the routes coincide, the corporation may build thereon. The authority is co-extensive with the coincidence of the routes.

Prior to the passage of said act, and prior to the going into effect of said constitutional provisions, the G. E. R. Co. was incorporated for the purpose of constructing and operating an elevated steam railway, in and through the streets of the city of New York. Its routes had been

designated, and full power was given it to lay down railroad tracks upon the designated routes, with all the incidental powers necessary for that purpose. The commissoners appointed under said Rapid-Transit Act adopted the routes of said company, requiring, however, some change in the form of the structure in some of the streets. *Held*, that assuming that said provision of the Rapid-Transit Act was intended to apply only to the G. E. R. Co., such provision, as so applicable, was not within the prohibitions of said constitutional provisions, as it did not grant to said company the right to lay down railroad tracks within the meaning of the Constitution, or any exclusive right not then possessed by it, but was simply intended to protect the rights it already possessed ; that the changes required were simply restrictive in character, and if, in imposing such restrictions, some benefits accrued, such as an extension of time for construction, this did not change the character of the act.

Also *held*, that the provision of the Constitution (art. 3, § 18) and of said act (§ 4), requiring the consent of a majority of the property owners or the certificate of Supreme Court commissioners and the consent of the local authorities, did not apply to said corporation.

The Rapid-Transit Act is not subject to the objection that it delegates legislative powers to the commissioners. The manner of exercising a franchise by a street railroad corporation is not an essential element of the franchise, and the legislature may authorize it to be controlled by the people or officers of a locality whose interests are especially affected by its exercise.

*Barto* v. *Himrod* (8 N. Y., 483) distinguished.

Upon an appeal from an order in an application under said act by a street railroad company, to condemn lands necessary for the construction of and forming part of its route, this court cannot inquire whether the applicant has acquired, or can acquire, the right to build its road through the other parts of its route.

As to whether, where, under said act, a railroad corporation is authorized to construct its road over a street in a city, the fee of which is in the city, abutting owners are entitled to damages for an incidental injury to their right of use or easement in the street, *quære.*

(Argued April 27, 1877 ; decided September 18, 1877.)

THESE were appeals, the one on the part of Catharine M. Kobbe, the other on the part of Edward H. Anderson et al., from an order of the General Term of the Supreme Court, in the first judicial department, appointing commissioners to appraise damages in proceedings to condemn lands for the purposes of the road of the petitioner. (Reported below, 9 Hun, 303.)

The facts sufficiently appear in the opinion.

*Wm. M. Evarts, E. Ellery Anderson* and *Algernon S. Sullivan*, for the appellants. The petitioners were not, on the proofs produced, entitled to a condemnation of the appellants' land. (*R. & S. R. R. Co.* v. *Davis*, 43 N. Y., 137; *Atkinson* v. *M. & C. R. R. Co.*, 15 Ohio St., 21.) The powers granted by the thirty-sixth section of the Rapid-Transit Act transcended the constitution and rendered the act void. (*In re Jones*, 30 How. Pr., 446; *Wynchamer* v. *People*, 13 N. Y., 378.) The Rapid-Transit Act was unconstitutional, because it was an attempt to confer further powers upon a private corporation existing before the amendment to the constitution, forbidding the passage of private charters of incorporation. (*Ex parte Pritz*, 9 Iowa, 30; *State of Ohio* v. *City of Cincinnati*, 20 Ohio St., 18; *State of Missouri* v. *Saline Co. Court*, 51 Mo., 350, 378, 385.) The use of a street for the purposes of a steam railway operated by a private corporation, though a public use, is a different use from that meant by the words "public use as a street." (*Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y., 97; *People* v. *Kerr*, 27 id., 204, 205.)

*John K. Porter* and *Samuel Hand*, for the respondent. The respondent's charter authorized it to construct and operate a street railway. (*Rogers* v. *Bradshaw*, 7 J. Ch., 342, 343; *Wellington* v. *Petitioners*, 16 Pick., 87–96; *Morgan* v. *Mon. Plank Road Co.*, 26 N. J. L. R., 109.) The alterations in the charter, under the Rapid-Transit Act, were within the reserved power of the Legislature. (Constitution, Article 1, Sec. 17; Article 8, Sec. 1; *The State* v. *The Commissioners*, N. J. Law, 228; *People* v. *Hills*, 46 Barb,, 344; *Miller* v. *The State*, 15 Wall, 478; *White* v. *The S. & U. R. R. Co.*, 14 Barb., 559; *P. P. R. Co.* v. *Griffin*, 24 N., Y., 150; *Tomlinson* v. *Jessup*, 15 Wall, 459; *T. & R. R. R. Co.* v. *Kerr*, 17 Barb., 581; *S. & S. P. R. Co.* v. *Thatcher*, 11 N. Y., 102.) They do not affect the franchise or title of the grantee. (*People* v. *Jones*, 63 N. Y., 306, 310; *People* v. *D. & C. R. R. Co.*, 58 N. Y., 152, 157;

*International Bank* v. *Bradley*, 19 N. Y., 245, 250; *Staats* v. *H. R. R. R. Co.*, 4 Abb. Ct. of App. Dec., 287; *Rex* v. *Devon*, 5 B. & A., 383; S. C. 27 Eng. Common Law, 165; *Central R. R. Co.* v. *Georgia*, 92 U. S. R., 665, 673; *Mosier* v. *Hilton*, 15 Barb., 663; *Syracuse City Bk.* v. *Davis*, 16 id., 188; *Zabriskie* v. *H. & N. Y. R. Co.*, 3 C. E. Green, 178, 192; *Buffalo etc. R. Co.* v. *Dudley*, 14 N. Y., 348; *Souch* v. *E. L. U. R. Co.*, L. R. [16 Eq. Cas.], 111.) The constitutionality of the Rapid-Transit will be presumed. (*People* v. *Albertson*, 55 N. Y., 54, 55; *People* v. *Briggs*, 50 id., 553; *Adams* v. *Howe*, 14 Mass., 340; *People* v. *Suprs. of Orange*, 17 N. Y., 235; *Ex parte McCallum*, 1 Cow., 550; *Warner* v. *Beers*, 23 Wend., 166; *Kerrigan* v. *Force*, 4 N. Y. Wkly. Dig., 171.) There was no unconstitutional delegation of the law making power to the county commissioners under the Rapid-Transit Act. (Sedg. on Stat. and Const'l Construction, 164–166; Cooley on Const'l Lim., 116; *Bank of Chenango* v. *Brown*, 26 N. Y., 467, 472, 473; *Currier* v. *W. S. R. R.*, 6 Blatch,, 492, 493, 494, *495; *Starin* v. *Genoa*, 23 N. Y., 493; *Bk. of Rome* v. *Vil. of Rome*, 18 N. Y., 38, 44; *Clarke* v. *City of Rochester*, 28 N. Y., 634; *Townsend* v. *Morris C. & B. Co.*, 39 N. Y., 171, 175; *Met. Bd. of Health* v. *Heister*, 37 id., 672; *Fearing* v. *Irwin*, 55 id., 486.) The Rapid-Transit Act was not private or local but a general bill. (*C. B. & Q. R. R. Co.* v. *Cutts*, 9 Chic. L. N., 201; *Covington* v. *E. St. Louis*, 78 Ill., 548; *Iowa R. R. Co.* v. *Soper*, 39 Iowa, 112; *People* v. *Tubbs*, 49 N. Y., 356–359; *People* v. *Hills*, 35 id., 449, 451; *People* v. *O'Brien*, 38 id., 193–195; *People* v. *Suprs. of Chautauqua*, 43 id., 11; *People* v. *McCann*, 16 id., 58–61; *Weed* v. *Tucker*, 19 id., 422; *McCormick* v. *Rusch*, 15 Iowa, 129.) It was not a private bill for exclusive privileges. (A. & A. on Corps., § 31; *Soc. for Establishing useful Manufactures* v. *Butler*, 12 N. J. [Eq.] 498, 502; *People* v. *Kerr*, 27 N. Y., 188, 191; *Bloodgood* v. *M. & H. R. Co.*, 18 Wend., 16, 21, 23, 46–48, 77; *People ex rel. Comrs. Wash. Park* v. *Banks*, 4 N. Y. Wkly.

Dig., 124.) The trust in respect to the streets acquired under the act of 1813 is one in behalf of the people and subject to the control of the Legislature. (*People* v. *Kerr*, 27 N. Y., 188, 213, 214; *Coster* v. *Mayor, etc.*, 43 id., 399; *Met. Bd. of Health* v. *Heister*, 37 id., 661–672; *Darlington* v. *Mayor, etc.*, 31 id., 164; *Kellinger* v. 42 *St. & R. R. Co.*, 50 id., 206, 209; *Fearing* v. *Irwin*, 55 id., 486; *Heyward* v. *Mayor, etc.*, 7 N. Y., 214.)

CHURCH, Ch. J.   These appeals are from orders appointing commissioners to appraise damages in proceedings to condemn lands for the purpose of the respondent's road. The proposed route lies through South Fifth avenue, in the city of New York. The fee of the street opposite their premises is in the appellants, and not in the city. Several points are presented, and have been exhaustively argued with great ability and ingenuity, and some of them are not free from difficulty. After as full an examination as I have been able to make, I have arrived at a conclusion upon the respective points made which I shall proceed to state with the reasons therefor briefly, without attempting to elaborate the arguments in their support. Among the most material of these points is the proposition that the thirty-sixth section of the Rapid-Transit Act (so called) (chap. 606 of the Laws of 1875), the first clause of which it is alleged was intended for the benefit of the respondent corporation, is a violation of some of the provisions of the last series of amendments to the State Constitution, which took effect on the 1st day of January, 1875, before the passage of the act. These provisions are as follows : " The Legislature shall not pass a private or local bill in any of the following cases :   *   *   * Granting to any corporation, association, or individual, the right to lay down railroad tracks.   Granting to any corporation, association, or individual any exclusive privilege, immunity or franchise whatever." The Legislature is required to pass general laws in these cases, and prohibited from passing any law authorizing the construction or operation of a street

railroad without the consent of one-half in value of the property owners, or the certificate of commissioners appointed by the Supreme Court.

It is important to understand the *status* of the Gilbert Company, at the time of the passage of the Rapid-Transit Act, as it has a bearing upon the proper construction to be given to the act in its application to this company. Prior to the passage of this act and before the amendments of 1875 took effect under the successive acts of 1872, 1873 and 1874, the Gilbert Company became incorporated for the purpose of constructing and operating an elevated steam railroad. Two sets of commissioners had, in pursuance of said acts, designated the routes over which the road was to be constructed, and the corporation was authorized, in the fullest manner, to occupy the streets and avenues designated for that purpose. Authority was also conferred to condemn lands under the power of eminent domain. The city authorities were prohibited from giving permission to any other person or corporation to do any of the acts which were authorized by the act to be done by this corporation, and were expressly enjoined to aid the corporation in carrying out the purposes of the law. Thus it will be seen that at the time of the passage of the Rapid Transit act, in 1875, the corporation was the grantee of the right to lay down railroad tracks upon the elevated plan described in the charter, and had all the incidental powers necessary for that purpose. The ·charter had not been forfeited, nor had there been a failure to comply with the conditions imposed in respect to the time of building the road. The Rapid-Transit Act authorized a comprehensive and independent system of rapid transit by elevated railroads through the city.

It authorized the appointment of commissioners by the mayor to determine the necessity for such railways, to locate routes, fix upon the plan of construction, organize and put in operation a corporation with powers defined by the act, and then by the first clause of the thirty-sixth section (which is in controversy here), it provided that " whenever the route

or routes determined upon by said commissioners coincide with the route or routes covered by the charter of an existing corporation formed for the purpose provided by this act, provided that said corporation has not forfeited its charter or failed to comply with the provisions thereof, requiring the construction of a road or roads within the time prescribed by its charter, such corporation shall have the like power to construct and operate such railway or railways upon fulfillment of the requirements and conditions imposed by said commissioners as a corporation specially formed under this act." The commissioners appointed for that purpose adopted the routes of the Gilbert Elevated Company, but required some changes in the form of the structure in a portion of the streets, from an arch covering the streets, supported by posts located at curbs as provided in the charter, to a structure supported by upright posts in the centre of the streets, and required a reduction of fare and the running of extra trains at half fare for the benefit of the laboring population, all of which has been assented to by the company.

A point was made also that the commissioners made a more radical change of the structure from a tubular railway to be operated in whole or in part by pneumatic power, to an open steam railway, but in the case of the *Sixth Avenue Railroad Company* v. *The Gilbert Company*, the evidence and findings in which are incorporated into the papers in one of these cases, it is found that the charter contemplated an open railway to be operated by steam power, and such is, I think, the proper inference from the act itself, and the facts proved, so that this point whether important or not, may be regarded as out of the case. It is pertinent also to refer to the rule of construction to be applied. Every presumption is in favor of the constitutionality of acts of the Legislature. An adverse doubtful construction is not sufficient to condemn an act. It is only in cases of a clear and substantial departure from the provisions of the fundamental law that courts will declare acts of the

Legislature invalid.    (55 N. Y., 54; 50 id., 553; 14 Mass., 340; 17 N. Y., 235; 23 Wend., 166.)

There is a distinction in this respect between the State and Federal Constitution.    The former grants to the Senate and Assembly, all legislative power not prohibited by the latter, or excepted by the instrument itself; the latter grants to Congress specific powers only.    Hence the exercise of a legislative power by the State Legislature will be presumed constitutional under the general grant of power, and will be sustained unless brought clearly within some of the exceptions, while a similar exercise of power by Congress can only be justified by an affirmative grant embracing the specific power exercised.    Assuming that the corporation having the coincident route or routes specified in the 36th section of the Rapid-Transit Act was descriptive of, and was intended to apply only to the Gilbert Co., the first question is in view of the facts and rule of construction referred to whether the Legislature did by that act grant to the Gilbert Company, the right to lay down railroad tracks within the meaning of this clause.    The right existed prior to the passage of the act, and that right the Legislature intended to protect.    The corporation must not have forfeited its charter or failed to comply with its provisions in respect to time, etc.    The act recognizes in terms that the corporation was formed for the purpose provided by the act, which purpose was to build and operate an elevated steam railway in and through the streets of the city.    The Legislature granted that right to the new corporation authorized to be created, but the company already possessing that right whose route or routes were satisfactory to the commissioners, was intended to be recognized and its powers confirmed.    The changes required were restrictive in character.    By the charter the whole street was to be covered by the structure, by the conditions imposed, only a portion of some streets could be occupied. We cannot determine as matter of law whether this change will be a benefit to or a burden upon the company, nor whether the street itself will be less or more inconvenient for

the public and abutting owners, than with the original structure. The reduction of fares, and the requirement for extra trains at half fare were clearly restrictive of existing rights.

I cannot accede to the proposition that any change in the structure and in the manner of occupying the streets, however restrictive upon the company or beneficial to the public in the use of the streets, constitute a fresh grant of the right to lay down railroad tracks. It is a misnomer to call such restrictions *grants* of any *right* whatever. As well might the cutting down of a fee to a life estate be termed a grant of land. The purpose of the corporation and its substantial powers were the same after as before the passage of the act, and if in imposing conditions, some benefits accrued, such as an extension of time, and the like, these would not change the character of the act. True, the act declares that the corporation, upon complying with the conditions imposed, shall have " like power " with corporations authorized to be created. It possessed like power before, and this clause must be construed as confirmatory of such power as applied to the changes and restrictions required and imposed. The constitutional clause was designed, I think, to prohibit an original and independent grant of the right to lay down railroad tracks, including the powers incident thereto.

I agree with the objectors, that the Legislature cannot grant this right under the guise of an amendment to an existing charter any more than by an original grant. It would be incompetent to grant this right to a corporation organized for a different purpose; but, in my judgment, an act restricting and regulating an existing right to lay down railroad tracks, is not a grant of that right within the meaning of this clause. It is not within the letter of the clause, nor within the evil at which the provision was aimed. I find nothing in any of the authorities cited to justify a different conclusion from that at which I have arrived.

The next question is, whether the Rapid-Transit Act (especially the 36th section) violates the other provision quoted, prohibiting the Legislature, by a private or local bill,

from " granting to any corporation, association or individual any *exclusive* privilege, immunity or franchise whatever."

It is not easy to understand precisely what was intended by this clause. Every franchise granted by the Legislature is, from its very nature, exclusive, in the sense that it does not belong to the citizens generally of common right. (Angell & Ames on Corp., § 4.). It is not necessarily exclusive in the sense that others may not obtain a similar grant. The difficulty is in determining what force is to be given to the word *exclusive* in this clause. We cannot say that it has no meaning. A patent right is an exclusive right; it is a monopoly. The owner may prevent the use of the article patented by every other person, unless the right is purchased of him. So many franchises of an exclusive character, such as ferries and the like, have been granted by States. In its application to the present case, if the right to lay down railroad tracks is an exclusive privilege, we have seen that the Legislature did not grant it; if it is not exclusive, the granting of the right would not be a violation of this clause. It certainly would not be exclusive in every sense, because it is competent for the Legislature to grant a similar right to others by a general law, and to do it, not so that others may occupy the respondent's property, but so that the exercise of the right may operate in competition for the same business. It is difficult to construe this clause as meaning anything less than an absolute monopoly, but it is not deemed necessary to define its precise signification. That duty must be discharged as cases arise. It is sufficient to say that it has not been made clear that the clause was violated by the Rapid-Transit Act. No exclusive right or franchise was granted to the respondent corporation upon any construction of the clause. Every substantial right existed before the passage of the act, and the conditions imposed, embracing changes of structure and manner of occupying streets, should be regarded as restrictive of existing rights, and not *grants* of rights or franchises within the constitutional sense. Even if doubts were entertained as to the proper construc-

tion of the clause and the act, the rule referred to would require. the validity of the act to be sustained. This series of amendments designed to restrict the powers of the Legislature in matters of detail under general phrases and undefined words is experimental in this State. They must be sustained and applied by a rational and practical construction, so as to subserve the purposes intended and prevent the evils designed to be remedied, but not by an artificial and technical construction, to extend their application to cases never contemplated. Such a construction would produce more injury than the amendments were designed to prevent.

This court has already, upon two occasions, in respect to other provisions of the series, felt obliged in the furtherance of justice, to adjudicate in favor of a practical, rather than a literal construction of the language. In both cases there was quite as much reason as in this for questioning the constitutionality of the acts of the Legislature. While every substantial violation of any of these prohibitory clauses should and will be promptly condemned by the courts, proper care must be exercised to guard against erroneous rules of construction to the extent of depriving the Legislature of all power to supply the necessary legislative wants of five millions of people extensively engaged in all the varied pursuits of advanced civilization. The Legislature evidently felt embarrassed by these provisions, and attempted to avoid all question in respect to them by passing a general act. The act is general in form at least, and probably as much so as the object sought to be accomplished would permit, but it is unnecessary to consider the point whether the act is to be regarded as private or local.

The views before expressed answer also the objection that the consent of a majority of the owners, or the certificate of the Supreme Court commissioners, must be obtained. This requirement applies only to cases where street railroads are authorized under general laws, and which the Legislature are prohibited from authorizing by private or local laws. It has no application to this corporation. Nor does the Rapid-

Transit Act require such consents or certificate. The affirmative requirement of that act is a compliance with the conditions imposed by the commissioners appointed by the mayor, and nothing more.

The fourth section authorizing the commissioners to lay out and designate routes, embodies the constitutional conditions imposed upon the Legislature in passing general laws authorizing the laying down of railroad tracks, and would apply to corporations authorized to be created by the act. The thirty-sixth section qualifies and limits the operation of the fourth section in respect to coincident routes. The fourth section embraces provisions for a general scheme of new routes and new corporations—the first clause of the thirty-sixth section limits its provisions by protecting and impliedly confirming rights secured by existing charters. This is manifest from the language employed requiring an existing charter not forfeited, and an existing corporation which had complied with the provisions of its charter as to time, etc., then when such a charter, and such a corporation exists, and there is coincidence of route, the corporation is to have "like power," etc., when? Simply "upon fulfillment of the requirements and conditions imposed by the commissioners." The constitutional condition of consent or certificate incorporated into the fourth section is not a requirement or condition of the commissioners in any sense, and such condition has no application to a corporation possessing the right to lay down railroad tracks on a designated route by a previous charter.

It applies only to such rights thereafter conferred according to the Constitution. It is not probable that the Legislature intended to impose an unnecessary condition, not required by the Constitution, and we may presume that if it had, the language would have been unambiguous. The Legislature by the fourth. section evidently intended to require the observance of the constitutional conditions in respect to consent as to corporations authorized to be created by the act, but there is nothing in the act to warrant

the inference of intention to extend its application to other cases.    The same reason applies also to the requirement of the consent of local authorities, and I refrain therefore from considering the question whether the acts of the local authorities proved, amount to consent within the meaning of the constitutional amendment and of the fourth section of the Rapid-Transit Act.

It is also objected that the act of the commissioners in designating the route is void, because the route designated crosses Broadway below Fifty-ninth street, which is forbidden by the Rapid-Transit Act.    The authority is to designate a route for a railway, over, under, through or *across* streets and avenues except Broadway below Fifty-ninth street. The exception seems to apply as well to the word *across*, as over, under, or through.    This is the literal reading, although it is evident that the same reason might not apply for prohibiting the crossing of a street as for laying a railroad *over*, *under*, or *through* a street.    But the commissioners expressly excluded from the routes designated by them any street or part thereof which was excluded by the act, so that if crossing Broadway is prohibited by the act, it is also by the commissioners.    I do not think that such exclusion would invalidate all the routes designated.    The commissioners are authorized to designate the *route* or *routes* for such railway, and whenever the *route* or *routes* determined upon coincide, the corporation having the previous right shall have like power, etc.    It is not necessary that all the routes should coincide.    If any of the routes coincide, the corporation may build on such coinciding route.    Whether, therefore, the route to Broadway, and from Broadway on the opposite side are considered one route or two, either or both coincide with the former designation, even if the crossing is not coincident.    The authority is co-extensive with the coincidence of route.    We think that this objection is not fatal to the rights of the respondent to an order to appraise appellant's damages to property in South Fifth avenue.

The objection that the Rapid-Transit Act improperly dele-

gates legislative power to the commissioners is not tenable. The case of *Barto* v. *Himrod* (8 N. Y., 483) is not controling. The existence of the law itself in that case was made dependent upon the vote of the people. This act was passed by the Legislature, and was perfect and obligatory, not depending for its existence upon any contingency whatever.

The county commissioners representing the interests of the locality were authorized to designate particular streets, in which the road should be built, and to determine the form of the structure, and to make rules and regulations for running the trains. These were matters of detail in involving the determination of questions of fact, in which each locality had an interest, and which it was eminently proper the local authorities should determine. The Legislature had the power to determine all these questions itself, but I am not aware of any rule which forbids the Legislature from referring such questions to a subordinate tribunal. There is no prohibition in the Constitution itself, express or implied, while the practice of the government has been uniformly in favor of referring analogous questions. I apprehend that an act authorizing a street railroad might properly refer to a local authority the power to fix the place in the street where the rails should be laid, and the form of the rails, and to regulate the time and manner of running the trains. The running of trains on steam railroads through cities and villages are now authorized to be regulated by local authorities. The manner of exercising a right or franchise in the cases supposed has never been regarded as the essential elements of the franchise itself, which the Legislature could not authorize to be controlled by the people or officers of a locality whose interests are especially affected by its exercise. The substantial powers conferred upon the corporations authorized to be created by the Rapid-Transit Act are particularly specified in the act itself, and the commissioners are authorized to regulate matters of detail, the proper adjustment of which will produce the least inconvenience and

injury to the public and adjacent owners, in the use and enjoyment of the public streets. In *Clarke* v. *City of Rochester* (28 N. Y., 634), DENIO, J., said: " While general statutes must be enacted by the Legislature, it is plain that the power to make local regulations having the force of law in limited localities may be committed to other bodies representing the people in their local divisions, or to the people of those districts themselves." Other authorities in this State are to the same effect. (37 N. Y., 672 ; 18 id., 38 ; 55 id., 486 ; see also, Cooley on Const. Limitations, 116, etc., and cases cited.)

The question of damages is not involved in these cases. In both cases the proceedings are instituted to acquire the title of the respondents in the street in front of their respective premises, and to have the damages appraised. The amount or extent of the damages are questions not properly before the court. It is sought, however, to present the question, whether abutting owners are entitled to damages for an incidental injury to their right of use or easement in the streets of the city where the fee is in the city itself, upon the ground that the right to condemn the interest of the owners in these particular cases should be denied, unless it appears that the corporation has acquired a lawful right to build the road throughout their whole route. True, it would be of no value to the applicant to acquire the right to build upon the short space involved in these proceedings unless it has acquired, or can acquire, the right through other parts of the route designated. But can we properly inquire whether it has acquired, or can acquire, such right? It seems to me not.

Other persons are interested who would have a right to be heard, and who might justly complain that the question had been prejudged.

To determine what particular occupation of the streets is to be deemed a legitimate public use involves important and delicate questions. They were very much debated in this court in the surface railroad cases, and the principles adjudicated in those cases will be regarded as obligatory upon the

court in deciding future cases. Whether the structure contemplated to be built and operated will be an invasion of the property of abutting owners in any of the streets entitling them to some remedy for damages, or whether it will be regarded as a legitimate use of the streets for the benefit of the public, the inconvenience and annoyance of which private abutting ownership is subject to, cannot, with propriety, be adjudicated upon these appeals.

The criticism upon the terms of the orders is not tenable. The orders are to be construed in connection with the constitution and the statutes, and the appellants will be at liberty to claim any damages to which they are constitutionally and lawfully entitled.

The orders must be affirmed.

ALLEN, J., also wrote for affirmance substantially on the same grounds.

FOLGER, J. The judgment in the case of the New York Elevated Railroad Company having adjudicated the constitutionality of the act of 1875, in all its parts, I yield to that judgment as the law of the land, and therefore concur in this.

RAPALLO and ANDREWS, JJ., concur on authority of the same case.

All concur.

Orders affirmed.