Fifth Nat. Bank of New York *v.* New York Elevated R. Co.

*(Circuit Court, S. D. New York. June 17, 1885.)*

1. Elevated Railway — Streets in New York City — Rights of Abutting Lot-Owner to Damages.

Where, under an act of a state legislature, a railroad company erects an elevated railroad over a street, the fee of which is in the city, an abutting lot-owner holds his easement in the street subordinate to the rights of the public therein; and unless the new structures erected on the street injure it as a thoroughfare for travel, and it is permanently subjected to a new use which is subversive of the original use, such abutting owner, though he may suffer inconvenience, is not legally injured and entitled to damages.

2. SAME—EVIDENCE OF NEW AND INCONSISTENT USE.
   The jury are not justified in finding that a new and inconsistent use has been imposed upon the street, unless travel is practically impeded, or light in the traveled way is sensibly diminished, or the street is, at the point complained of, made inconvenient for the accommodation of persons or vehicles.

Motion for New Trial.

*Kelly & Macrae* and *Roger A. Pryor*, for plaintiff.

*Davies & Rapallo* and *Henry H. Anderson*, for defendant.

SHIPMAN, J. This is a motion by the defendant for a new trial, the jury having returned a verdict for the plaintiff for $6,000.

Before the year 1874, Third avenue and Twenty-third street, each being streets 100 feet in width, were legally laid out by the authorities of the city of New York, over and upon lands which were acquired by condemnation for street purposes, under the act of 1813, whereby said city obtained the title in fee to said streets and to the land thereunder, in trust, that the same and that each street "be appropriated and kept open for, or as a part of, a public street and avenue, forever, in like manner as the other public streets in said city are, or of right ought to be." The plaintiff purchased, in the year 1874, a lot upon the south-west corner of Third avenue and Twenty-third street, which was bounded on the east by the west side of said avenue, and on the north by the south side of said street, and erected thereon a building, which was completed in the spring of 1875. This building has ever since been used in the following way: the basement for stores or offices, the first floor for the plaintiff's banking-room, and the other floors for apartments.

Under the provisions of the statute passed by the legislature of the state of New York in 1875, and known as the "Rapid Transit Act," which provided for the construction of elevated and underground railroads, an elevated steam-railroad was built by the defendant, in the year 1879, along Third avenue. It was held by a majority of the court of appeals of the state of New York, in 1877, that, under the rapid transit act and the previous acts in relation to the defendant, provision was "made for compensation for any property rights the abutting owners may have in the streets," the fee of which is in the city; but the question whether the contemplated structures would invade any property or rights of such owners so as to entitle them to damages, it was thought did not arise. *In re Elevated R. Co.* 70 N. Y. 327; *In re Gilbert Elevated Ry. Co.* 70 N. Y. 361. No compensation to the plaintiff for injury or damage was made, and there does not seem to be any adjudication, by which the plaintiff was bound, on the subject.

The structure which the defendant built was a permanent one, consisting, at the corner of the streets in question, of an elevated railroad track, placed upon substantial pillars about 15 feet high, and a depot over a part of Twenty-third street, which is reached by a staircase from said street; the entire structure being of the strength and

capacity necessary for the equipment of a railroad operated by steam, and for the accommodation of large numbers of passengers. This action was brought to recover damages, which were alleged to have been caused to the plaintiff's property by the erection of said road and depot, and by the running of railroad trains near to the building. The principal damage was alleged to consist in the obstruction of light from the building, and in the injection into it of noxious odors, gas, and smoke.

The charge to the jury was to the effect that if the streets, at the point where the plaintiff's building is situate, were permanently subjected by the erection of these structures to a new use, which was subversive of and repugnant to the original use for which each street was taken,—that is, for an open thoroughfare or avenue for travel,—and such new and inconsistent use was a damage to the easement of the plaintiff in the street, which easement or right of property consisted only in a right to the light and air afforded by the street, and in a right of access thereto, then, for the damages arising to its property from such exclusion of air, light, and access, the plaintiff was entitled to compensation. The requests to charge covered five points, which were substantially as follows:

(1) That the determination whether the street should or should not be kept open as a public street rested in the discretion of the legislature. (2) That the evidence clearly showed that the new structure did not subject the streets to a new use subversive of or inconsistent with their original use as thoroughfares. (3) That in order to find that there was such new and inconsistent use, the jury must find that the defendant's structures interfered with the free passage of persons, horses, or vehicles over Third avenue. (4) That an abutting owner has no right of property in the street to be affected or damaged by such new use. (5) That there could be no recovery for so much of the damage as was caused by the operation of the railroad trains.

It is competent for the legislature, so far as not restrained by the constitution under which it acts, to grant to a railroad company power to lay a railroad longitudinally over a highway; and when private property is taken by a use which is subversive of or inconsistent with the original use, compensation must be made therefor. *Springfield* v. *Connecticut River R. Co.* 4 Cush. 63. When the title in fee to such street is vested in a city in trust for the benefit of the people, no compensation is to be made to the city for the occupancy of the street by the railroad, because the legislature conclusively determines what is for the public advantage. *People* v. *Kerr*, 27 N. Y. 188. In such case, it is also often said that the abutting owners are not entitled to compensation, because, having parted with the title to the land covered by the street, they have no remaining interest or right therein which can be taken, or which can be the subject of damage. This statement of the law was true with reference to the facts which judges or commentators had in mind when the statement was made. An abutting proprietor upon a street, the fee of which is in the city, has no legal interest which can be affected by a surface horse railroad

which is placed in the street; nor, although the inconvenience and annoyance resulting from the operation of a steam surface road is much greater than that resulting from a horse railroad, is his property ordinarily taken or appropriated, in a legal sense, by a steam road which is laid opposite his lot. But a state of facts has occasionally arisen within the last few years by which, although the new method of travel to which the street is subjected, is for the transportation of persons or of freight, the structures which are placed upon the street for the convenience or necessities of the new system are such as not only blockade and prevent the street from being an avenue for ordinary travel, but also deprive an abutting owner from access to the street or from light from it. While a legislature may have said, in general, that the occupancy of the streets of a city by a steam railroad is consistent with the use for which they were established, yet it did not intend to say that all the structures which might subsequently be placed upon a particular narrow street for the purposes of such railroad did not impose a new burden upon the street. A platform may be built over a street which shall cover its entire width and exclude light from the roadway, and the adjacent buildings and structures may be placed opposite the lot of the abutting owner which shall prevent access to his land, and thus a new condition of things is brought into existence which was not contemplated by learned judges when they said that an abutting owner has no interest in the street which can be the subject of damage.

It is this new condition which raises the question whether an abutting owner, who has no right in the soil of the street, has any especial incorporeal right therein of which he may be deprived, and for the loss of which he is entitled to compensation. The main object of a city highway is for the public travel, but that is not its only object. City streets are also, incidentally, to provide sites upon which dwellings and buildings for business purposes can be built. Such streets are established in order to furnish an overflowing population with places in which to live and to work. An important part of the value of a lot abutting upon a street consists in its access to the street, and in the fact that one or more sides can always receive air and light, while a building away from a street may be hemmed in on all sides. This privilege or capacity which appertains to a lot abutting upon a street which has been dedicated to the public, though it is not a right in the soil of the street, is real, and is important, and, so far as the right of access to the street is concerned, has been distinctly recognized by courts. There may be a difficulty in defining the extent of the right, but there is a natural sense of justice which is not satisfied by the declaration that because the owner has parted with his right to the soil in front of his lot, which was taken for the purposes of a street, therefore he is remediless, although the street may be permanently so covered by new structures for the benefit of modes of travel not used for ordinary street purposes, as to exclude him from access to it, or

from light from it. In the *Story Case*, this right is called an easement in the bed of the street for the purposes of air and light, and access from it. *Story* v. *New York Elevated R. Co.* 90 N. Y. 122.

But, inasmuch as the land covered by the street was taken for public uses, the abutting owner holds his easement subordinate to the rights of the public in the street; and if the new structures are not inconsistent with or destructive of the uses for which the street was originally taken, he has no cause to complain. Until the streets are burdened with an occupancy which substantially injures them as thoroughfares for travel, and they are permanently subjected by the new structures to a new use, which is subversive of the original use, the abutting owner, though he may suffer inconvenience, is not legally injured, because his easement is subject to the controlling right of the public; and if the street continues to be a thoroughfare for ordinary travel, in accordance with the objects for which it was originally laid out, no right of the abutting owner is trenched upon.

The question, then, which was submitted to the jury is of the first importance. It was whether, on the corner of Third avenue and Twenty-third street, either of those streets were subjected by the permanent structures there erected to a new use subversive of or inconsistent with the original purpose for which the streets were taken, that of being a thoroughfare for travel; and the jury were told that the main object of a street was to create and maintain an avenue for travel, and if these streets were kept open and unobstructed, and were not used for purposes inconsistent with travel, the use of the street was preserved. While the language of the charge was correct and was technically sufficient, I fear that the jury were not sufficiently clearly told by the court that, in order to find that the streets were not kept open and unobstructed, the road-bed then not being occupied by the railroad track, it was not sufficient to show that pillars and staircases had been placed in the streets, and a track had been placed upon the pillars which to some extent prevented the streets from being as open as they were before the road was constructed, but that they must be of opinion that substantial obstructions had been placed upon the travel upon the street, and that it was thereby rendered inconvenient to the public as an highway. I fear that the jury were unintentionally led into the opinion that because a new and permanent structure for the purposes of a steam road had been placed over a street of 100 feet in width, therefore they were permitted to find that a new and inconsistent use was imposed upon the street, although travel was practically unimpeded, and light in the traveled way was not sensibly diminished, and the street was not actually at that point made inconvenient for the accommodation of persons or vehicles.

As the motion for a new trial is granted for the reason which has been given, I do not consider the remaining question which was strenuously argued by the defendant's counsel, which was, in substance, that the injury caused to the plaintiff by the injection into its build-

ing of gas and smoke in consequence of the operation of the trains, should not be considered as an element of damage.

The motion for a new trial is granted.