### *In re* METROPOLITAN TRANSIT CO.

*(Supreme Court, General Term, First Department. May 18, 1888.)*

1. RAILROAD COMPANIES—PROCEEDINGS TO CONDEMN LAND—PETITION TO APPOINT APPRAISERS—EVIDENCE.

   The petition for the appointment of commissioners of appraisal of real estate sought to be acquired by a railroad company, presented under the general railroad act, (Laws 1850, c. 140,) § 14, contained a statement, as required by that section, that it was the intention of the petitioner, in good faith to construct and finish a railroad to and from the places named for that purpose in its articles of association, and the answer controverted this allegation. *Held* that, under section 15, authorizing any one interested in the proceedings to show cause against the granting of the petition, and to disprove any of its allegations, it is error to exclude evidence tending to show that the company had no stability, nor capital, and had not done anything for 15 years since its incorporation to show a *bona fide* purpose to construct its railway.

2. HORSE AND STREET RAILROADS—CONSTRUCTION OF ROAD—EXTENSION OF TIME FOR BUILDING.

   Since the adoption of the amendment of 1874, (Const. art. 3, § 18,) prohibiting the legislature from authorizing the construction or operation of a street railway, except upon certain conditions, an act extending the time for the completion of a road, by a company incorporated under an act passed in 1872, upon its routes as finally adopted, cannot be construed to give the company any right to lay its tracks where it had no right to lay them previously.

Appeal from special term, New York county.

Petition of the Metropolitan Transit Company of the city of New York to determine the amount of compensation to be paid to the mayor, aldermen, and commonalty of the city of New York. The petitioner was organized under the act of the legislature, (chapter 833, Laws 1872,) and was authorized to build an elevated railway, commencing at Broadway, at a point opposite Bowling Green; thence through private property to Morris street, opposite Church street; thence through Church street to Canal street; thence through private property, parallel to Greene street, to Houston street; thence along

the westerly side of the city, at least 75 feet west of Sixth avenue, to the northerly side of Thirty-Seventh street; thence, with a curved line, to a point at least 75 feet west of Seventh avenue to Forty-Second street, and so on to the Harlem river. Nothing was done under this act until the year 1875, when the engineers laid out a route from Canal street to Forty-Second street, which was located on Broadway, only between Fourteenth street and Forty-Second street. Nothing further was done until the year 1881, when the legislature (chapter 636, Laws 1881) authorized the board of engineers, named in the original act of 1872, to complete their maps and plans, and to build its roads upon routes as finally adopted and completed by the board of engineers. The amended maps were filed July 11, 1882. The petitioner presented its petition for the appointment of commissioners on December 9, 1875, but through its own motions nothing was accomplished thereby until March 5, 1886, when a new petition and notice were served, which finally resulted in the order of the 23d day of April, 1887, from which this appeal is taken. This appeal by the city is from the order of the special term appointing commissioners of appraisal.

Argued before VAN BRUNT, P. J., and MACOMBER and BARTLETT, JJ.

*Roscoe Conkling* and *Thomas P. Wickes*, for appellant. *J. Alfred Davenport* and *George R. Wingate*, for respondent.

MACOMBER, J. Among other things required by the statute (section 14, c. 140, Laws 1850) is that the petition shall state that it is the intention of the company in good faith to construct and finish a railroad from and to the places named for that purpose in its articles of association. By section 15 of the same act any person who is interested in the proceedings may show cause against granting the prayer of the petition, and may disprove any of the facts alleged in it. The petition contained this statutory requirement, and the answer, by the sixteenth paragraph thereof, controverted it. The special term has, in effect, excluded all evidence that was offered in behalf of the city to controvert this allegation of the petition, and to establish its affirmative allegation that the petitioner was not in a condition to and did not intend to construct the railway. The testimony of Mr. Swayne, the cross-examination of Mr. Robert Bliss, and of Andrew Dwinnelle, if these witnesses had been permitted to answer the questions propounded to them, was designed to show what was actually in issue between the parties; that the company, in fact, had no stability or capital, and had not done any act during the 15 years since its incorporation to show a *bona fide* purpose to construct its railway. Good faith is an essential element to granting a petition of this character. Otherwise the courts would be lending themselves to mere speculative projects of gentlemen who, having ascertained by inquiry through a commission what money they must expend for right of way, may thus be enabled to sell such rights or negotiate the stock and securities. For the error in rejecting this evidence, we should in any event feel constrained to reverse the order made at the special term.

But there are other reasons why this petition should not have been granted, which, if correct, would dispense with the necessity of a new trial. By the first maps filed, and under the act of 1872, there was no purpose on the part of the company to occupy any portion of Broadway below Union Square. Indeed, a careful reading of that act would lead quite irresistibly to the conclusion that it was the intention of the legislature to prohibit such occupation by the petitioner throughout Broadway, except to cross it at or near Forty-Second street, and such prohibition was in fact and in words accomplished, unless the right was reserved to the petitioner to erect a branch of its main line through this part of the city under the following clause in that act, viz.: "Also from a point south of Forty-Second street, on and to connect with the line heretofore described, easterly and northerly to the Grand Central depot at

Forty-Second street and Fourth avenue." By virtue of this clause, and under an assumed authority derived from the act of 1881, the petitioner has now filed its map by which it claims the right thus to construct the railway upon Broadway from Chambers street to Forty-Third street, and thence to the Grand Central depot. When the charter of the petitioner was granted to it originally there was no prohibition in the constitution of this state against the right of the legislature to permit the occupation of streets by railroads. By the amendment, however, of the constitution of 1874 (article 3, § 13) the legislature was prohibited from authorizing the construction or operation of a street railroad, except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having control of, that portion of a street or highway upon which it is proposed to construct or operate such railroad, be first obtained, or in case the consent of such property owners cannot be obtained, the general term of the supreme court in the district in which it is proposed to be constructed might, upon application, appoint commissioners, etc. As it seems to us, the petitioner is attempting to evade this constitutional prohibition through a misapplication of the act which it secured to be passed by the legislature in the year 1881. The right to complete the railway permitted by the act of 1872 cannot, under the act of 1881, be enlarged so as to give in effect to this corporation a right to lay its tracks where it did not possess that right prior to the constitutional prohibition. It cannot be permitted to the petitioner, under the guise of constructing a railway under its original charter, to occupy portions of the streets in the city of New York for which, by the constitution of the state, it is required, first, to obtain the consent of a majority in value of the property owners, and the consent also of the authorities of the city. Nor does the act of 1881 purport to give any warrant for the contention of the petitioner. It is not the laying down of tracks authorized by the act of 1872 which is the object of this petition, but rather the laying of an entirely new railroad. In this respect the case differs, at all important points, from the case of *In re Railway Co.*, 70 N. Y. 361. In that case there was no attempt to extend the routes secured by the charter of the company. In no sense can the Broadway portion of the streets covered by the maps of the petitioner be deemed a branch of the main line which it was authorized to construct. The meaning of the clause above referred to, by which the first branch running to the Grand Central depot might be located south of Forty-Second street, is that it should connect with the main line, which had in terms been authorized by the legislature in the description given in the act.

For these reasons the order appealed from should be reversed, and the application of the petitioner denied, with costs.

VAN BRUNT, P. J., concurring. BARTLETT, J., taking no part.