### THOMPSON *v.* MANHATTAN RY. CO. *et al.*
### THOMPSON *et al. v.* SAME.

(*Common Pleas of New York City and County, Equity Term.* June 27, 1889.)

**1. ESTATES—RIGHTS OF REMAINDER-MAN.**

The erection of an elevated railroad, whereby the market value of land has been depreciated, constitutes an injury to the inheritance for which a remainder-man may sue for damages; and the right to enforce payment therefor is not suspended, during a prior estate for life, under Code Civil Proc. N. Y. § 1665, providing that a remainder-man "may maintain an action founded upon an injury done to the inheritance, notwithstanding any intervening estate for life or for years."

**2. SAME—INJURY TO REMAINDER—DAMAGES.**

The measure of damages to a remainder by the erection of an elevated railroad is the difference in the market price of such remainder before and since the injury was sustained, to be estimated by taking the damage to the fee, and apportioning it between the life-tenant and remainder-man.

On petition for injunction.

Actions by William W. Thompson, as tenant by the curtesy, and Pell Thompson and others, as remainder-men, against the Manhattan Railway Company and others for damages.

*John A. Weeks,* for plaintiffs.     *William B. Hornblower,* for defendants.

LARREMORE, C. J.   These actions are for injunctions against defendants' running their elevated railroad past certain premises in Pearl street; for damages already sustained through the operation of said road; and for a removal of the structure unless plaintiffs are indemnified for the permanent injury to said property.   The plaintiff in the first action is tenant by the curtesy of the premises in question, and against his legal capacity to sue no substantial reason is urged, while it is contended that the facts do not establish any actual damage.   The plaintiffs in the second action are remainder-men, entitled to said premises in fee-simple upon the death of their father, the said tenant by the curtesy.   It has been argued with much force, and upon many grounds, that these remainder-men have no cause of action, and that their complaint should have been dismissed.

The Code gives to a remainder-man the right to bring an action founded upon an injury done to the inheritance, notwithstanding an intervening estate for life or for years.   The question to be decided is whether the erection and the operation of the elevated railroad have injured and are injuring the inheritance of Pell Thompson and his co-plaintiffs.   It was held in the *Story Case,* 90 N. Y. 122, that the mere invasion of the plaintiff's easement of light, air, and complete liberty of access from a public street constituted injury; that it was immaterial whether or not the plaintiff owned the fee of the street; that the right to have the street kept open and continued as a public street for the benefit of abutting lands constituted "property;" and that depriving the owners of such right was, in reality, taking from them property, which could not be done under the constitution without compensation.   In the case at bar, the elevated road has inflicted damage upon property now owned by the remainder-men.   There can be no question but that a vested remainder is "property" under the ordinary as well as any legal sense of the term.   It may be bought and sold with the same freedom as present estates in land.   It may be devised by will, and, in default thereof, will pass to the remainder-man's heirs.   All the essential incidents of "property" attach to it, and it is unquestionably "property" within the meaning of the constitution.   Before the erection of the elevated road, the plaintiffs could have disposed of their vested remainder at a certain price.   They could dispose of it now, but at a reduced price.   The difference in market prices of such remainder, before and since the laying out of the road, represents the damage done to the plaintiffs' property and the injury to the inheritance.   This may be at times a difficult thing

to arrive at in the concrete, but it will always be closely related to and deducible from the damage to the present estate. If the present estate has been injured to a given extent in rental value and in selling price, buyers would give proportionately less for the future estate if it were exposed for sale. In practice the law will provide a convenient and substantially just method of ascertaining the remainder-man's measure of damage by taking what would be the damage to the whole fee, if the property were owned in fee-simple, and apportioning such amount between the life-tenant and the remainderman, according to the annuity tables.

This method will be adopted in the present case. A portion of the compensation for the total, permanent damage to the fee will be paid to the tenant by the curtesy. The balance of such total compensation must, at some time, be paid to the person or persons legally entitled thereto; otherwise the defendants would be enabled, by reason of the existence of an outstanding life-estate, to confiscate a large portion of the value of the fee. The defenses raised to the present action by the remainder-men to recover this balance now must fall within one or two general heads: (a) It must either be contended that the remainder-men have no existing property right in this claim for damages to their portion of the fee; or (b) that such property right now exists, but that the privilege of enforcing it is suspended during the prior estate; that the right exists, but the remedy is postponed. Both of these positions are untenable. As above shown, the whole policy of our law is to treat vested future estates as property presently owned. The person who ultimately comes into actual possession and enjoyment, takes the premises subject to any burden which the remainder-man may have imposed thereon before the termination of the life-estate. Similarly, payments to the remainder-man for damages and his release would operate as a bar to any subsequent claims for such damages.

On the question of the alleged postponement of the remedy, it is necessary only to cite section 1665 of Code. It cannot be argued that this section applies only to physical injuries, in the nature of waste. Such actions are expressly provided for in article 6 of the Code. The language of section 1665 is general in its character, as is also article 8, in which it occurs, and which has the broad designation of "other actions relating to real property." For the reasons that the market value of the inheritance has been lowered, that by reason of the elevated railroad the same is worth less to the remainder-men now if they should desire to sell or mortgage it, and that it will be worth less in the hands of their devisees or heirs, said inheritance has been injured within the meaning of the Code. The judgments will fix $25,000 as the damage to the whole fee, and apportion it between the tenant by the curtesy and the remainder-men.