*In re* METROPOLITAN EL. RY. CO. *In re* JONES *et al.* *In re* NEW YORK EL. R. CO. *In re* CLARKSON *et al.*

*(Supreme Court, Special Term, New York County. January, 1891.)*

1. EMINENT DOMAIN—CONDEMNATION AFTER TAKING.
   A railroad company may institute proceedings to condemn land after the road has been constructed; and it is no bar to such proceeding that the land-owner has recovered judgment in an action theretofore brought against the company for damages and an injunction.

2. SAME—PETITION—INTENTION TO COMPLETE ROAD.
   In proceedings by an elevated railway company to condemn an easement, the question whether a statement in the petition that petitioner has constructed a railway, "which it was so authorized to construct," is equivalent to a statement that it has constructed the entire road authorized, so as to comply with Laws N. Y. 1850, c. 140, § 14, which requires such petitioner to state that "it is the intention of the company, in good faith, to construct and finish a railroad from and to the places named for that purpose in its articles of association," is one of fact, to be determined on all the proofs. Following *Railroad Co. v. Dominick*, 8 N. Y. Supp. 151.

3. SAME—WHEN CONSTRUCTION IS COMPLETE.
   Where a street-railroad company constructs all its road as authorized by its charter, except a part along a projected street over a navigable river, which cannot be graded, the road is in good faith completed as authorized.

4. SAME—CONSTRUCTION OF ROAD—VARIANCE FROM CHARTER.
   The rule that unless a railroad company intends, in good faith, to do what it has proposed in its articles of association, the private owner shall not be compelled to sell, and the company shall not be permitted to take, property for the public use, does not apply where the property has been taken, and the railroad has been constructed and has been in operation for years, carrying a large number of passengers daily, though the road as built does not correspond with the original designation in its charter.

5. SAME—PETITION—INABILITY TO ACQUIRE TITLE.
   A petition for the condemnation of property for a railroad states facts showing an inability to acquire title where it alleges that petitioner "authorized efforts to

be made to purchase the property at sums deemed reasonable in the judgment of the agents and officers of the petitioners; that valuations were placed upon the said property, estates, and rights by the agents and officers of the petitioners at sums so deemed reasonable as aforesaid, upon information and belief that the said sums were offered to the owners; * * * and petitioners further allege that the owners * * * refuse to sell" for said sums deemed reasonable by petitioners.

6. SAME—INTEREST TO BE TAKEN.

The petition by an elevated railroad company to condemn a right of way through a street need not show whether it is an easement, or the fee of the abutting owners in the street, that is sought to be taken.

7. SAME—STATUTE OF LIMITATIONS.

Where an elevated railroad company has constructed and is operating its road without having purchased or condemned the easements of the abutting owners, the statute of limitations does not run against its right to institute such condemnation proceedings.

8. SAME—ABATEMENT—CONSOLIDATION OF COMPANIES.

Laws N. Y. 1867, c. 254, as amended by Laws 1879, c. 503, provides that any railroad company may take a transfer of any or all of the stock of a railroad company of which it is lessee, and may issue its stock in lieu thereof; that, "whenever the whole of the said capital stock shall have been so surrendered or transferred, * * * the estate, property, rights, privileges, and franchises of the said corporation whose stock shall have been so surrendered or transferred shall thereupon vest in" the company to which the transfer shall have been made; and that "existing liabilities or the rights of creditors of the corporation whose stock shall have been so surrendered or transferred" shall not "be in any way affected or impaired by this act." *Held*, that the lessor corporation did not, by such transfer of its stock, lose its corporate character, so as to abate condemnation proceedings instituted before the transfer of its stock.

9. SAME—ILLEGAL STRUCTURES—WHO MAY OBJECT.

The fact that a railroad company, seeking to condemn a right of way in a street, has erected illegal structures, can be taken advantage of only by property owners who are affected by such illegal structures.

10. SAME—BURDEN OF PROOF.

In condemnation proceedings instituted by a railroad company, the burden is on petitioner to show the necessity of acquiring the property, its intention to complete the road, and its endeavor in good faith to agree with the property owners; while the burden is on the owners as to an issue raised by the answer concerning petitioner's incorporation.

11. SAME—DISMISSAL—PURPOSE ILLEGAL IN PART.

Where property is sought to be condemned for a purpose which is partly legal and partly illegal, and it cannot be determined how much of the property is necessary for the purpose that is legal, the proceedings will be dismissed.

12. SAME—PARTIES—REMAINDER-MEN.

In proceedings to condemn land for railroad purposes, the remainder-men, as well as the life-tenants, must be made parties.

Application by the Metropolitan Elevated Railway Company and the New York Elevated Railroad Company to condemn land. For former report, see 7 N. Y. Supp. 707.

Laws N. Y. 1850, c. 140, § 14, requires such petitioner to state "that it is the intention of the company in good faith to construct and finish a railroad from and to the places named for that purpose in its articles of association."

*Davies, Short & Townsend,* for petitioners.　　*J. A. B. Cowles* and *Roger Foster,* for various respondents.

O'BRIEN, J. These two several applications are made to acquire title to property, easements, or other interests referred to in the several subdivisions of the petition, and for the appointment of commissioners to ascertain and appraise the compensation to be made to the owners of, or persons interested in, the property, easements, or other interests so to be taken for the purpose of maintaining the elevated railroads in this city. Preliminary objections, and subsequently answers, were filed by nearly all of the numerous owners of property embraced in these proceedings. Many of these present the same

question, and, instead of considering them separately, it will be more conven-
ient to consider them generally, leaving questions which are peculiar to
particular parcels to be discussed subsequently.    As stated upon the hearing,
the trial as to each parcel is to be deemed a separate trial in the matter of
evidence; hence the evidence used for or against the application as to any
particular parcel is available only as to that particular case.    Many of the
questions raised by the preliminary objections and answers have been passed
upon by the court at special and general terms; and, as these should be fol-
lowed, a reference to the proceedings or cases in which the ruling was made
is alone necessary.

1. In this very proceeding, upon the original petition, (*Railroad Co.* v.
*Dominick*, 8 N. Y. Supp. 151,) it was held that an elevated railway company
may maintain proceedings to condemn an easement, notwithstanding that
the road has been constructed.

2. It was held, also, that the statement in the petition that the company
intend, in good faith, to construct and finish a railroad from and to the places
named in its articles, or its equivalent, is essential.    Where the road has al-
ready been constructed, a statement of intention to do so is not necessary;
but the question whether a statement that the company has constructed a
railway which it was so authorized to construct is equivalent to a statement
that it has constructed the entire road authorized, is one of fact, to be deter-
mined on all the proofs, and should not be solved on a preliminary objection.
Upon this question, therefore, it remains to be determined upon the proofs
whether the petitioners have constructed the entire roads authorized.

3. While it was intimated by Mr. Justice ANDREWS, in his opinion reported
in 2 N. Y. Supp. 278, that the burden was on the property owner, yet upon
the trial of the issues here the petitioners assumed the burden, and we must
therefore examine the proofs presented for the purpose of determining whether
they have constructed the roads as authorized.    As to the Metropolitan road,
(*In re Jones*,) whether the line of its present structure coincides with the
route as originally designated can, in view of the enabling acts, make little
difference, because that route has by the special statutes under which it was
constructed a special privilege of partial construction.    Laws 1872, c. 885,
§ 8; Laws 1874, c. 275, § 1.    The question, therefore, can only arise in the
proceeding (*In re Clarkson*) conducted on behalf of the New York Elevated
Company.    It is conceded that the line of railroad stops at the Harlem river.
By its articles of association the road was to run from the Battery to the vil-
lage of Yonkers, in the county of Westchester.    By the act of 1867 (chapter
775) the time for building the road was limited to 10 years from the time of
filing the articles of association; that is, 10 years from July, 1875.    The com-
panies can claim, therefore, no present right to extend their railways over
any new routes; that is, over any route or routes other than these streets
wherein the present structures exist.    As regards the New York Elevated
Railroad Company, the legislature has expressly waived any claim of forfeit-
ure arising out of the charge of non-completion of road by the act of 1875.
In *Re New York El. R. Co.*, 70 N. Y. 327, EARL, J., says: "By the act of
1867 the railroad company was required to construct the experimental section
within one year, (legal delays excepted,) and the extension thereof as author-
ized, so far as comprised in the limits of the city of New York, within five
years thereafter.    These provisions were probably not complied with.    They
were conditions for a non-compliance with which the sovereign power could
claim a forfeiture of the company's charter.    But a cause of forfeiture can-
not be taken advantage of or enforced against a corporation collaterally or
incidentally, or in any other mode than by a direct proceeding for that pur-
pose against the corporation; and the government creating that corporation
can alone institute the proceeding, and it can waive a forfeiture, and this it

can do expressly, or by legislative acts recognizing the continued existence of
the corporation." The petitioners had actual roads in operation for many
years, and in the original designation fixed provision was made for extensions
—nort, east, and west—along a projected street along the Harlem river, known
as "River Street," which was never opened or constructed or graded, and
which never had any existence as a street, appearing only on certain published
maps as a projected street which was to be opened along and through parts
of the bed of the Harlem river. Subdivision 55 of the requirements of the
rapid transit commissioners of 1875 provided that on the river street the
"railway" may be constructed as a surface railroad upon the grade of the
"street," etc. Obviously, a merely projected street over the bed of a naviga-
ble river cannot be graded; therefore it would be impossible to accommodate
a railroad structure to its grade. Undoubtedly, the original intention of the
railroad company, by its articles and the requirements of the commissioners,
as shown in their proceedings, was to make use of this street, when opened,
as a means of furnishing a route over which a road could be constructed and
operated, and therefore continued to the limits as fixed. It being a physical
impossibility to complete the road over and along such street, it seems to me
that in completing the road as far as the same could lawfully and physically
be done the company has in good faith completed the road as authorized. The
vice which, to my mind, underlies all the arguments presented against the
right of the petitioners to maintain these proceedings, based upon their fail-
ure to complete their road, is to be found in the fact, which is constantly in
the arguments lost sight of, that attention is confined to the case of a merely
projected railroad to which the act of 1850, as originally framed, had exclu-
sive reference, and by losing sight of the different constructions necessary to
be employed in applying that statute to petitioners' roads as they exist. Re-
spondents' position would be perfectly sound if this were a case of a railroad
corporation in its initial stage, which, after filing articles of association stat-
ing the places to and from which this proposed road is to be constructed, had
merely surveyed and staked out its right of way. Here, however, there is no
question, and the evidence shows that petitioners have constructed practical
working and useful railroads, which are now and have been for years in act-
ual operation, running thousands of trains and transporting hundreds of
thousands of passengers daily along various routes. It has been determined,
moreover, by a vast array of judgments, by the court of appeals, the supreme
court, and the superior court, that petitioners are entitled, destined, and
obliged to acquire title to the property, title to which it seeks to acquire in
these special proceedings, namely, private property taken by the construction
of the roads. The effect of holding that they were not entitled to maintain
this proceeding because originally the road as projected was greater in dis-
tance than the road as actually built, although it has been shown that an act-
ual road has been in operation for many years, and authority to extend it does
not exist, would be to prevent them from appearing in court in any attitude
than as defendant tort-feasors. Where the reason for this rule requiring a
statement that the company intends in good faith to complete its road does
not exist, the rule itself must necessarily fall. The reason for the rule is ob-
vious, requiring a strict construction of the eminent domain statute, applica-
ble to a company in its initial stage. Unless such a company intends in good
faith to do what it has proposed in its articles of association, the private
owner shall not be compelled to sell, and the company shall not be permitted
to take, property for the public use. This falls when it is conceded that prop-
erty has been taken, is to be kept, and is to be sold. It seems to me, there-
fore, that the petitioners have shown the completion of the entire road which
each company was authorized to construct. This objection upon the original
petition was overruled by Mr. Justice ANDREWS, but so much stress was laid

on this objection that I deemed. it proper to briefly give. my reasons for con-curring.

4. The preliminary objection made, that the petition fails to state facts showing an inability to aquire title, must also be overruled. Under the amendment allowed by the general term, the petitioners state that, previous to the inception of the proceeding, "they authorized efforts to be made to purchase the property herein sought to be compensated for, at sums deemed reasonable in the judgment of the agents and officers of the petitioners; that valuations were placed upon the said property, estates, and rights by the agents and officers of the petitioners at sums so deemed reasonable as afore-said; upon information and belief that the said sums were offered to the owners of the said property, estates, and rights, respectively; and petitioners further allege that the owners of the said property, estates, and rights, re-fuse to sell the same to the petitioners for the said sums, respectively, which the petitioners deemed to be a reasonable compensation therefor." This be-ing a sufficient statement of facts showing an inability to agree, the ques-tion whether the offers made in each case were so made in good faith must depend upon the proof which has been presented concerning each parcel.

5. The question as to the statute of limitations has already been passed upon by me in *Re Vogt, ante,* 502.

6. The questions as to prior actions pending or judgments obtained have been disposed of by Mr. Justice BARRETT, (*In re Kearney.*)[1]

7. Another objection which has been availed of, both as preliminary and by way of answer, relates to the description of property in the petition so to be acquired. Upon the original petition the general term held the description to be too indefinite. Under the permission granted, the petitions in this re-spect have been amended, and have seemingly obviated the objections pointed out by the general term. The elaborate statement in each case of the structure in front of each parcel, together with the maps and a statement that it seeks to acquire "such of the easements of light, air, and access as have been so taken," is sufficiently definite. The main argument in support of the re-spondents' view, that the petition is indefinite, is based upon the failure, as claimed, of the petitioners to show whether it is an easement, or the fee of the respondents in the street, that is sought to be taken. No good reason is shown why the same rule should not be applied in proceedings of this char-acter as is applied in actions brought against the railroad where the same ques-tion has been raised. So far as I have been able to find in the reported de-cisions of cases brought by property owners, where the objection was taken by the railroad company that the property owner should be forced to elect whether he sought an injunction and damages for the injury to his easement or fee, it has been uniformly ruled adversely to the railroad company, and against compelling the property owners to so elect. As stated in *Mattlage* v. *Railroad Co.,* 14 Daly, 1, "whether the plaintiff was the owner of the fee to the middle of such street, or had only an easement therein as an abutting owner, was immaterial." Whether a property owner owns the land consti-tuting a portion of the bed of the street in front of his lot or not, his rights, as far as they are, or possibly could be, affected by an elevated railroad, are substantially the same. The petition shows full well that what petitioner seeks·to acquire is in substance the right to maintain and operate its road as heretofore constructed, and now maintained and operated. This view as to the immateriality of whether the abutting owner has a fee in the street, or simply easements therein, which has been uniformly adopted on behalf of the property owner, seems to find support also in the view taken by the court of appeals in the case of *Story* v. *Railroad Co.,* 90 N. Y. 158, where the

---

[1] See note at end of case.

similarity in the position of the fee-owner and easement-owner is thus announced: "Of course, we do not overlook the fact that in the *Williams Case*, [16 N. Y. 97,] the whole fee was in the plaintiff, subject to the easment in the city, while in the case before us a limited fee is in the city, subject to the easement in the plaintiff, but the right of the adjoining owner, and that of the city, are as distinct in the one case as in the other, and it can make no difference how that right or interest is designated. In each case the adjoining owner is entitled to have the premises kept open as a public street. Whether acquired by grant or condemnation, it carried with it that burden or limitation to its use, and the owner of the lot has an estate or interest by way of easement over the street to the same, and of the same degree as he has in the land to which it is annexed or appurtenant."

8. The objection as to the form of verification in the petition has already been passed upon by me. *In re Vogt, supra.*

9. An answer to the objection that the petition does not state the subscription to the capital stock, as required by the statutes, is furnished by the following quotation from the petition: "And that all the capital stock, at least $10,000 for every mile of its railroad constructed or proposed to be constructed in this state, has been in good faith subscribed, as required by said act of 1850, and ten per cent. thereof paid in."

10. The objection that the New York Elevated Railroad Company is deprived of the right to maintain this proceeding by the fact of the lease of its road to the Manhattan Railroad Company is met by the authority of the case of *New York, etc., R. Co.* v. *Union Steam-Boat Co.*, 99 N. Y. 12, 1 N. E. Rep. 27; 8 N. Y. Supp. 151.

11. A more substantial objection is presented as to the effect of the transfers of the shares of the stockholders of the petitioners to the Manhattan Railway Company upon the right to maintain these special proceedings. As to the Metropolitan Company, it is shown that only a partial transfer of the shares has been made, and an inspection of the statutes (chapter 254, Laws 1867) alone is necessary to show that the contention that the Metropolitan Company has ceased to exist is untenable. When applied, however, to the New York Elevated Railroad, an entirely different and more difficult question is presented. It is admitted that since this proceeding was instituted, and before the amendment of the petition, the New York Elevated Railroad Company has been consolidated with the Manhattan Railway Company, and that such consolidation took effect on February 3, 1890. The question presented is as to the effect of such consolidation on the right of the petitioner to maintain this proceeding. The act of 1867 (chapter 254) contains but one section, and as amended by the Laws of 1879 (chapter 503) reads as follows: "Any railroad corporation created by the laws of this state, or its successors, being the lessee of the road of any other railroad corporation, may take a surrender or transfer of the capital stock of the stockholders, or any of them, in the corporation whose road is held under lease, and issue in exchange therefor the like additional amount of its own capital stock at par, or on such other terms and conditions as may be agreed upon between the two corporations; and whenever the greater part of the capital stock of any such corporation shall have been so surrendered or transferred, the directors of the corporation taking such surrender or transfer shall thereafter, on a resolution electing so to do, to be entered on their minutes, become *ex officio* the directors of the corporation whose road is so held under lease, and shall manage and conduct the affairs thereof as provided by law; and whenever the whole of the said capital stock shall have been so surrendered or transferred, and a certificate thereof filed in the office of the secretary of state, under the common seal of the corporation to whom such surrender or transfer shall have been made, the estate, property, rights, privileges, and franchises of the said corporation

whose stock shall have been so surrendered or transferred shall thereupon vest in, and be held and enjoyed by, the said corporation to whom such surrender or transfer shall have been made, as fully and entirely, and without change or diminution, as the same were before held and enjoyed, and be managed and controlled by the board of directors of the said corporation to whom such surrender or transfer of the said stock shall have been made, and in the corporate name of such corporation. The rights of any stockholder not so surrendering or transferring his stock shall not be in any way affected hereby, nor shall existing liabilities or the rights of creditors of the corporation, where stock had been so surrendered or transferred, be in any way affected or impaired by this act." It has sometimes been stated that "whether or not a consolidation involves the dissolution of the consolidating corporation, and the creation of a new, depends upon the statute under which the consolidation takes place." Mor. Priv. Corp. § 942. The act of 1867 does not expressly provide in reference to the lessor corporation for the surrender or transfer of all of its stock to the lessee, nor does it contain any regulations upon this particular subject. In this regard it differs from the Laws of 1869, c. 917, entitled "An act authorizing the consolidation of certain railroad companies," which makes it lawful for a railroad corporation to merge and consolidate its capital stock, franchises, and properties with those of any other railroad corporation. This latter act provides that upon compliance with certain terms said corporation shall be deemed to be one corporation; (section 4) that "all and singular the rights  *  *  *  shall be taken and deemed to be transferred to and vested in such new corporation, without further act or deed;" and that (section 5) the respective corporations shall be deemed to continue in existence to preserve the right of creditors from all liens unimpaired, and also that no suit, action, or other proceeding shall be deemed to have abated or discontinued by such consolidation; but such new corporation may be, by order of the court, on motion, substituted as a party, (Id.) In the scheme, therefore, for a consolidation under the act of 1869, a distinct legislative intent is shown that pending actions and proceedings should not abate or be discontinued, because other provisions of that statute distinctly declare that for various purposes the original corporation should be deemed to be extinguished, and a new corporation to have been created. The act of 1867 discloses no such legislative intent to extinguish the lessor corporation upon the surrender or transfer of all of its stocks to the lessee. I do not think, therefore, that the vesting in the Manhattan Company, under the act of 1867, of the "estate, property, rights, privileges, and franchises," included the right, privilege, or franchise to be a corporation. Apart from this consideration, however, section 755 of the Code provides: "An action does not abate by any event if the cause of action survives or continues." By section 3347, subd. 6, of the Code, the foregoing section is made applicable to actions and special proceedings. Therefore my conclusion is, from a reading of the statutes and the sections of the Code, that while the petitioner the New York Company would have no right at the present time to institute proceedings, these, having been instituted prior to the filing of the certificate, did not thereby abate, and the same may be continued. The suggestion that the effect of the transfer would be to leave the petitioner without money or property wherewith to pay the damages when fixed by the commissioners is met by the conclusion, that would thence follow, that unless the award was paid the property would not be condemned. In other words, the rights of the respondents cannot be taken away until the compensation fixed has actually been paid.

12. Another objection urged by certain of the respondents relates to a third track and other alleged illegal appliances opposite their lots. If tenable as to each parcel therein, a separate trial being had, this objection can be available

only to those affected by the illegal structures. In *Re Gilbert El. R. Co.*, 70 N. Y. 361, which was an appeal from an order appointing commissioners to appraise damages in proceedings to condemn land in South Fifth avenue, the appellant raised an objection to the legality of the route in defendant's crossing Broadway at Thirty-Fourth street, in alleged contrariety to the statute; but the court says: "We think that the objection is not fatal to the rights of the respondent to an order to appraise appellant's damages to property in South Fifth avenue." As against respondents whose property is sought to be taken for the purpose of maintaining such alleged illegal structures, it is incumbent upon the companies to show authority for their action. Subdivision 52 of the requirements and conditions of the rapid transit commissioners reads as follows: "The authority is given for the construction of such supports, turn-outs, switches, sidings, connections, landing places, stations, buildings, platforms, stairways, elevators, telegraph and signal devices, and such other requisite appliances upon the road or roads, and in the locations determined by the commissioners, as shall be proper for the purpose of rapid transit railway, and as shall be necessary to meet the requirements of the traveling public." Minutes of proceedings of board of rapid transit commissioners, October 4, 1875, p. 288. It remains, therefore, in each particular case, to determine the character of the structures complained of, and determine whether they fall within those authorized, and, if they do, whether they are requisite, proper, and necessary. This requires an examination into the particular parcels which are affected thereby, and will hereafter be considered in connection therewith. What has been said under this head applies to questions raised by some of the respondents as to the right to maintain stations along the route of the road, and this question will be disposed of in connection with the parcels affected thereby. Generally speaking, what was said by ANDREWS, J., in *Railroad Co. v. Davis*, 43 N. Y. 146, is applicable: "When the corporation claims to acquire lands under a delegation of the power of eminent domain, it must show express authority of law to justify the claim." "The taking of private property for public uses is in derogation of private rights. It is in hostility to the ordinary control of the citizen over his estate, and statutes authorizing condemnation are not to be extended by inference or implication. * * * It should not be allowed to be exerted by or in behalf of individuals or corporations, except under the express sanction and clear authority of the law. And, again, no more property can compulsorily be appropriated than the legislature has declared to be necessary for the accomplishment of the public purposes contemplated." *In re Albany St.*, 11 Wend. 149. The issues raised by the answers of nearly all the respondents, as to whether the railway had in good faith endeavored to purchase before commencing these proceedings, can be determined on the proof offered in relation to each parcel. Nothing more need here be said as to the rules to be applied upon such an issue in order to reach a conclusion; for these were fully discussed in my former opinion. *In re Vogt, supra.*

13. As to the burden of proof. It has been held to be on the petitioner to show the necessity of acquiring property, (*In re New York C. R. Co.*, 66 N. Y. 407;) intention to complete road, (*In re Staten Island R. T. R. Co.*, 20 Wkly. Dig. 15;) and the endeavor in good faith to agree with the persons interested, (*In re Lockport & B. R. Co.*, 77 N. Y. 557.) It is on respondent, upon an issue raised by the answer as to the incorporation of the petitioner. 99 N. Y. 12, 1 N. E. Rep. 27. Upon a review of the authorities, Mr. Justice ANDREWS concluded that, while the burden as to matters lying specially within its control was upon the petitioner, the burden upon other issues raised was upon the respondents.

Applying these general considerations thus outlined, it remains to apply them to the preliminary objections and the issues raised by the answers in each particular case.

*In re Jones.*

As to parcel No. 9, the application should be granted.

Parcel No. 10 is known as 24 and 26 Murray street and 27 Park place. In front of the Park-Place building is an elevated railway station, which, including the stairway, extends about 30 feet east of Church street, covering all the premises in question, and part of the next building. The question is presented as to whether the road is authorized to construct a station such as has been constructed, and condemn the respondent's property rights so taken in the construction of the station. This controversy has to be decided by a construction of the statutes, and decisions, if any, thereunder. In the case of *Mattlage* v. *Railway Co.*, 14 Daly, 1, wherein the right of the company to maintain a depot extending down Warren street beyond the westerly line or side of Greenwich street was involved, it was held that neither the Laws of 1867, c. 489, nor the Laws of 1875, c. 595, authorized the railway company to build stations or place stairways in or over any streets other than those in which it was authorized to lay its tracks. It is true, the decision in that case was based upon the construction which was given to the acts under which authority was claimed, which entirely differ from chapter 606 of the Laws of 1875, with its amendments, and also the act organizing the Gilbert Company, (Laws 1872, c. 885,) under which the present controversy arises. After an examination, however, of the statutes relied upon, I think it extremely doubtful as to the company's right. In the absence of some express authority to be shown for the exercise of the right, private property should not be thus taken under the power of eminent domain. While so much of the property as is necessary for the maintenance and running of the road, itself could be condemned in this proceeding, it is inseparably connected with an application which seeks also to condemn for the purpose of maintaining a structure for which no express authority is shown. It being impossible, therefore, to determine how much of the property of the respondents should be taken, the proceedings as to those premises should be dismissed.

As to parcel No. 11, it is shown that a station-house, with a waiting-room and ticket office, is situated in Park place immediately in front of the respondents Douglass' property. The actual body of the house extends something like 30 feet in Park place, and covers the street from sidewalk to sidewalk. The staircases on each side of the station extend about as much further into Park place. One of these staircases lies in front of and extends beyond all the property front of Douglass upon Park place. For the reason expressed in reference to No. 10 the proceedings as to parcel No. 11 must be dismissed.

Parcel No. 130, situated on the corner of First avenue and Eighth street, being known as 132 First avenue, presents the same question as in the preceding parcel. The petition and map show that it is proposed to acquire such easements as have been taken by the erection and maintenance of the depot structure in Eighth street, in addition to such easements, etc., as it has taken by its structure and in the operation of the road in First avenue. The proceeding as to this parcel, for the reasons before stated, should be dismissed.

As to parcel No. 2, special objection was made upon the ground of defect of parties. The only party to this proceeding is Sheppard Knapp, as trustee for the life-tenant, Andrew Hammersley. The remainder-men were not made parties. The failure to join the remainder-men seems to me fatal in maintaining this proceeding. When we take the requirements of the general railroad act, (sections 15, 21, Laws, 1850,) it would seem that all the interests in a specific piece of property should be condemned at the same time, and not in separate parcels. As I recall the decisions in certain actions brought for injunctions and damages, insistence was made against the right of remainder-men to be parties to the action, upon the ground that they were not in possession. This was overruled, and this ruling was subsequently

affirmed by the general term. Until, therefore, the case of *Thompson* v. *Railroad Co.* 6 N. Y. Supp. 929, is reversed, it stands as an authority for the right of remainder-men to be parties plaintiff in an action against the road, and there is at least an intimation in favor of the view that in a proceeding of this kind all those interested in the property to be condemned should be brought in as parties, whether they are life-tenants in possession or remainder-men. For this reason the proceeding as to parcel No. 2 should be dismissed.

Parcel No. 183, situated on the corner of Ninety-Ninth street and Third avenue. Directly in front of the property is a building which is called the "Trainmen's Building," which is used as a sort of waiting place for trainmen, and is right on the structure in the middle of the road. Also a coal bridge and coal chute. The coal chute is in a portion of Third avenue and Ninety-Ninth street, immediately adjacent to the property. I can find no authority for such structures. As it appears upon the face of the petition that the easements sought to be condemned will include the right to maintain these illegal structures and operations in the street, the proceeding as to this piece of property should be dismissed, because it would be impossible to determine which part of the damages would be due to the legal portion, and which to the illegal portion, of the structure; and, before the right to condemn any portion of the land of a private individual is granted, it should abate these illegal structures maintained in front of and immediately adjacent to the property sought to be condemned. In parcel 184, as in the case of parcel No. 2, there is a defect of parties by a failure to bring in the remainder-men, and for the reasons therein stated the proceedings should be dismissed.

In reference to the other parcels embraced, an examination of the objections made, and a consideration of the proofs offered, warrant the granting of the application. In that connection, apart from the questions which have been discussed generally, some of the respondents have laid great stress upon the maintaining of what is designated as a "third track." Upon the proof here, however, it has been shown, as to the property of the respondents included in this proceeding, that the construction complained of was in reality a siding or turn-out, which, under subdivision 52 in proceedings of the rapid transit commissioners, is an authorized structure. It is not my purpose to determine that the railroads have any right whatever to maintain a third track for the purpose of storing cars in the public streets, or for any other purposes than as a siding or turn-out; but, where it is shown that a siding or turn-out had been constructed, it will not, by simply calling it a "third track," do to condemn it as an illegal structure. The testimony shows that the purposes of turn-outs, switches, or sidings is to turn cars off to the main track, temporarily, in the exigencies arising in the operation of the road. Under this right, however, the company should not be permitted to make store-houses of the streets because it may need to utilize its sidings for the purpose of accommodating a sudden increase of travel through so-called "commission hours," or in case of an accident. It is not shown by any evidence that there has been constructed what might be called, technically, a "third track," as distinguished from a "siding." The former designation is only applicable to a line of track used for the regular and continued passage of trains, which the evidence does not show existed in front of any of the property in this proceeding.

### *In re Clarkson.*

Parcel No. 181 relates to property known as No. 1760 Third avenue, situated on the westerly side thereof, between Ninety-Seventh and Ninety-Eighth streets. Here, as in parcel No. 183, special objection was made to the maintenance of the proceeding, in that the petitioners sought to acquire property now appropriated by it for a structure which imposed upon respondent a spe-

cial and peculiar burden by constructing opposite his premises, in addition to the ordinary tracks of the railroad, and maintaining there, an additional structure supporting two railroad tracks, with planking, drip-pans, etc., extending over the curb, and within a few feet of the wall of the respondent's premises. It was shown that these additional tracks were used for the storage of cars and locomotives directly in front of the respondent's premises. For the reasons expressed in reference to such additional structures in parcel No. 183, the proceedings as to this parcel should be dismissed.

As to the other parcels embraced in this proceeding, (*In re Clarkson,*) they require no special consideration. My conclusion upon the objections and the evidence is that the prayer of the petitioner should be granted. In a great many of the cases, neither preliminary objections were made, nor answers filed, and in such cases, and others where defaults were suffered, it is, of course, entitled to relief. *In re New York, etc., R. Co.*, 99 N. Y. 12, 1 N. E. Rep. 27.

In reference to the parcels where, by reason of the defect of parties respondent, the proceedings should be dismissed, the court, upon payment of costs, will grant an amendment so that the defect can be supplied. The contention that, by reason of such defect, the proceeding must abate, is not sound; for by section 20, c. 140, Laws 1850, the court is given the power at any time to amend any defect or informality in any of the proceedings authorized by the act, or to cause new parties to be added. In those cases, therefore, if the costs are paid, an amendment will be allowed; otherwise the proceedings, as suggested, will be dismissed. In accordance with these conclusions, orders should be entered.

### NOTE.

In re Kearney, referred to above, has never been reported. The opinion is as follows:

"BARRETT, J. (1) The petitioner may maintain a proceeding of this character notwithstanding the construction of the road. If the easement is necessary for the maintenance or operation of the road, it can be condemned under the statute. (2) The suit in the superior court is not a bar to this proceeding. The court there simply found that the owner's interest had been depreciated in a given sum, and that an injunction should run against the companies unless they chose to pay such sum. The companies are not bound to accept this condition. They may, if they choose, proceed under the statute. Such is the effect of the language used by DANFORTH, J. Henderson v. Railroad Co., 78 N. Y. p. 438. Whether, in view of the express finding of fact as to the quantum of depreciation, that matter is *res judicata*, may be questionable. The contention against that theory is that the finding was not the subject of a judgment, and consequently was not binding upon the parties. The judgment was for damages for the wrong done, and an injunction against it continues. True, the court said the injunction should not go into operation, provided the defendant chose to pay, in addition to the fixed damages, $9,000 for the general depreciation; but there is no judgment for this latter sum, and the finding of fact on that head was solely for the purpose of providing a definite basis for the condition. At all events, this finding is not conclusive upon the right to proceed under the statute. Whether it is conclusive upon the commissioners may well be left for determination when the question properly arises before them. It follows that the application should be granted."