gation it appears that the bonds are valid. I do not understand this to have been a judicial investigation, and, while it is sufficient .to justify the comptroller in recording the bonds and paying interest thereon, I know of no principle upon which it can be held to estop the city from setting up any legal defense, if, in the future, such a defense should be found to exist. It will be seen that the cancellation of these bonds and the issue of new corporate stock in their place would involve consequences which it is not to be presumed the legislature intended, and the letter of the section referred to does not demand such a construction. The privilege accorded to the owners of such stock is to "convert" their coupon bonds into registered bonds. There is not a single word in the section as to "exchanging" coupon for registered bonds, or as to "surrendering" such bonds, or as to the duty of the comptroller to "cancel" them. They may be "converted," and the method of their conversion is prescribed in the last clause of the section. The comptroller is authorized to "detach all coupons therefrom, and [he] shall thereupon indorse the fact of such registration with a reference to this section." It is this act of cutting off the coupons and indorsing the fact of registration upon the bonds which "converts" them from coupon to registered bonds; and, if it be necessary to give effect to every word in the section, it would do no violence to the language to say that when he had thus transformed the bonds, and redelivered them to the owner, he had "issued" registered bonds for the coupon bonds which had been presented to him. The manifest intention of the section was not the exchange of one bond or security for another, but. merely a change in the method of paying principal and interest on the same bond; simply the transformation of the same bond from coupon to registered form. The motion for a mandamus is denied, with $10 costs.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

G. L. Sterling, for appellant.
J. H. Caldwell, for respondent.

PER CURIAM. Order affirmed, with costs, on the opinion of SCOTT, J., in the court below.

---

_(40 App. Div. 242.)

WALDMULLER et al. v. SEASIDE & B. B. EL. R. CO. et al.

(Supreme Court, Appellate Division, Second Department. May 8, 1899.)

1. STREET RAILROADS—ELEVATED STATION IN STREET—RIGHT TO ERECT.
    A street-railway company cannot erect an elevated structure in a street for the storage of its cars or accommodation of its trainmen, to the injury of an abutter.
2. SAME—CLEANING CARS IN STREET—INJUNCTION.
    Where a street-railway company's charter prohibits it from washing its cars in a street, an abutter may have it restrained from so doing.

Appeal from special term.

Action by John P. Waldmuller and another against the Seaside & Brooklyn Bridge Elevated Railroad Company and others. From a judgment for defendants, plaintiffs appeal. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

· Henry G. Atwater, for appellants.
Alex. S. Lyman, for respondents.

HATCH, J. The plaintiffs are owners of certain premises on Crescent avenue, in the borough of Brooklyn, such premises being oc-

cupied by a three-story building, used for business purposes on the ground floor, and as an apartment house above. In 1893 the Seaside & Brooklyn Bridge Elevated Railroad Company (the defendant the Brooklyn Elevated Railroad Company being the lessee) constructed a line of railroad terminating at or near these premises, without having secured the consent of the plaintiffs, and subsequently erected a station, with a house for the accommodation of trainmen, and other appurtenances, directly in front of the property of the plaintiffs, thus appropriating the property of these plaintiffs to its own use, without having made provision for their compensation. In addition, the defendant used the platform so established opposite plaintiffs' premises for the storage of cars, and the house for the accommodation of the trainmen was for the purpose of use in connection with such storage at this point. It also appeared that the defendant washed the windows of the cars at this place, and otherwise cleaned them. By this action, the plaintiff seeks to restrain the defendant from operating its railroad until it has made compensation, and also from using the side track which has been constructed for the purpose of storing cars. We should have little difficulty in supporting the judgment rendered in this case, were it not for the fact that the court has found that the construction of the trainmen's house, and the storage of the cars upon the track constructed for that purpose, were in all respects lawful, and subject only to liability to make compensation for the property rights taken. So far as we can find from the record, there is nothing which justifies such finding, or which tends to its support. The chartered rights of the defendant, so far as they are set forth in the record, embrace no provision authorizing the use of the streets, either above or below the surface, as a yard or station for the purpose of storing therein or thereon its cars, or for the erection of other structures as appurtenances thereto. It was stated by Andrews, C. J., in Mahady v. Railroad Co., 91 N. Y. 148: "It cannot, however, be questioned that a street cannot be converted into a yard for the storing or deposit of cars, to the injury of adjoining owners"; and in Black v. Railroad Co., 32 App. Div. 468, 53 N. Y. Supp., 312, this court supported a judgment which restrained the railroad company from standing cars in the street for the purpose of loading and unloading the same of mail matter, as constituting an unlawful use of the street. In principle, there can be no difference between converting a structure elevated above the street into a yard for the storage of cars, and using the surface of the street for the same purpose. Such was the view taken by the court in Re Metropolitan El. Ry. Co. (Sup.) 12 N. Y. Supp. 506, 515. By the provisions of the charter of the company, it is required that "no car or engine shall be washed on or over any public street or place." The washing and cleaning was a clear violation of this provision, and should be enjoined. The defendant having shown no right or authority to use this street for the storage of its cars, and the maintenance of its train house in connection therewith, there exists no support for the judgment in this respect. Nothing which appears in Adler v. Railroad Co., 138 N. Y. 173, 33 N. E. 935, conflicts with this view. That case rests upon peculiar facts, and its doctrine is not to be extended. It is clear that it furnishes no authority in

support of the defendant's contention in this case. It follows that the judgment should be reversed, and a new trial granted. All concur.