GEORGE B. SWIKEHARD and Others, as Commissioners of Sewerage, etc., in the City of Rochester and in the Town of Gates, Respondents, *v.* FRED P. MICHELS and Others, Appellants.

*A local statute providing for the draining of swamps is unconstitutional — power of the Legislature to provide for the construction of sewers in cities — when such work is a proper municipal charge — chapter 603 of the Laws of 1892 constitutional — when a statute will not be condemned as unconstitutional — compensation under Condemnation Law.*

A local bill which has for its sole or its main purpose the drainage of swamps or low lands, although such drainage may be required for the public health, is not constitutional. The Legislature has, however, power by a local act to authorize the construction of a sewer in any city of the State; such act is nowhere prohibited by the Constitution, and, therefore, the Legislature may by statute direct the work to be done and prescribe the manner of doing it.

The Legislature may provide for the carrying away of sewage when the public health and convenience require it, whether the territory to be drained by the sewer be within the bounds of an incorporated city or village, or be any other portion of the State so thickly settled that health and decency require that sewage and foul refuse matter which may breed pestilence shall be removed; and if the needs of the city demand and the health of its citizens require such an action, the Legislature may direct the city authorities to construct the sewer upon a route selected and pay for it out of the funds of the municipality, the question in such case being whether, upon the whole, the particular enterprise is primarily for the benefit of the people of the city and within the ordinary range of municipal action; if such conditions exist, the purpose is a city purpose although people outside are incidentally benefited; the law may not only prescribe a sufficient size for such a sewer, but it may also direct such an extension as will supply the future needs of those who live or who are likely to live within the area which might naturally drain into it.

The fact that more or less water is drawn off into a sewer for the purpose of draining a low piece of ground which happens to lie near it, does not invalidate an act authorizing the construction of the sewer in a city.

Chapter 603 of the Laws of 1892 is a local act; its principal object is to provide the means of disposing of the sewage which flows out of a certain territory in the city of Rochester and the town adjoining the city limits, and such act is constitutional.

A statute is to be judged by its practical effect and operation, and so judged is not to be condemned as unconstitutional unless it is clear and plain that some provision of the Constitution has been violated.

The provision of section 6 of chapter 603 of the Laws of 1892, to the effect that if the commissioners cannot agree with the owners they may proceed under the Condemnation Law, is not objectionable by way of prescribing the mode of condemning the land.

Notwithstanding the fact that the commissioners are authorized to issue certificates in payment for the land taken, yet as no owner is required to accept them, inasmuch as he may rely on the direction of the final order in the proceedings and insist upon receiving his money before his land is actually taken, there is no objection to such provision.

APPEAL by the defendants, Fred P. Michels and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Monroe on the 17th day of May, 1894, upon the decision of the court, rendered at the Monroe Special Term, decreeing that the condemnation of the real property described in the petition is necessary for the public use, and that the plaintiffs are entitled to take and hold such property for the public use, with notice of an intention to bring up for review on such appeal all proceedings antecedent to said judgment.

*Thomas Raines,* for the appellants.

*William F. Cogswell,* for the respondents.

Judgment appealed from affirmed, with costs, on opinion of RUM-SEY, J., at Special Term.

Present — DWIGHT, P. J., LEWIS, HAIGHT and BRADLEY, JJ.

The opinion of the Special Term was as follows:
RUMSEY, J. :

This proceeding has been begun under the authority conferred by chapter 603 of the Laws of 1892, providing for the construction of a sewer in certain wards of the city of Rochester and in the town of Gates, which adjoins the city on the west. It has been adjudged that the work is necessary for the public health, and the plaintiffs have been duly appointed commissioners to carry it on. Being unable to agree with the defendants for the purchase of lands required for the sewer, the plaintiffs have taken this proceeding. The answer contains denials of certain allegations of the petition, but those allegations, I think, upon the testimony submitted, are sustained.

The only question here presented is whether the act in question is constitutional.

That the construction of the sewer is required for a public purpose, namely, to preserve the public health, cannot be denied, because it has been so formally decided and adjudged. But the

claim of the defendants is that, conceding the public purpose, the act is yet not within the power of the Legislature, because that body is forbidden to pass a local or private bill providing for the drainage of swamps or other low lands, even for a public purpose.

That this bill is local must be conceded. (*People* v. *Supervisors of Chautauqua*, 43 N. Y. 10.) It may, I think, be conceded also that a local bill that has for its sole or its main purpose the drainage of swamps or low lands, although such drainage is required for the public health, is not constitutional, although, in view of the rule that these limitations upon the power of the Legislature are not to be extended (*Matter of Gilbert Elevated Ry. Co.*, 70 N. Y. 361, 371), this may be open to argument if it were necessary to deny it in this case.

But I think it is not to be disputed that the Legislature has now, as it always had, the power, by local act, to authorize the construction of a sewer in any city of the State. Such a power is nowhere prohibited by the Constitution, and, therefore, the Legislature may by statute direct the work to be done, and prescribe the manner of doing it. (*People ex rel. McLean* v. *Flagg*, 46 N. Y. 401; *People ex rel. Morrill* v. *Supervisors of Queens Co.*, 112 id. 585, 588.) Manifestly, it may provide for the carrying away of sewage when the public health and convenience require it, whether the territory to be drained by the sewer be within the bounds of an incorporated city or village, or be any other portion of the State so thickly settled that health and decency require that sewage and foul refuse matter which may breed pestilence shall be removed.

Indeed, did the needs of the city demand it, and the health of the citizens require such an action, the Legislature might have directed the city authorities to construct the sewer upon the route selected, and pay for it out of the funds of the municipality. (*Matter of the Mayor of N. Y.*, 99 N. Y. 569, 571, 585.)

The question in each case is whether upon the whole the particular enterprise is primarily for the benefit of the people of the city and within the ordinary range of the municipal action.

If those conditions exist, the purpose is a city purpose, although people outside are incidentally benefited.

When a great trunk sewer is to be built in a large and rapidly growing city, proper regard for economy and the interest of the

community requires that some thought should be taken for the future growth and wants of the city. The law may, therefore, prescribe not only sufficient size to such a sewer, but may also direct such an extension as will supply the future needs of those who live or are likely to live within the area which might naturally drain into it. (*Matter of Mayor of N. Y.*, 99 N. Y. 569, 591.)

None of these things are seriously disputed by the defendants.

They draw a distinction between the power of the Legislature to drain swamps and low lands for the public health by local acts, which they deny, and the power in the same manner to require the construction of sewers to carry off the sewage from more or less thickly populated districts, which last power cannot be disputed. But, of course, the fact that more or less water is drawn off into a sewer for the purpose of draining a low piece of ground which happens to lie near it, does not invalidate the act authorizing its construction.

Indeed, the use of sewers is quite as much to carry away collections of rain and surface water which would otherwise become stagnant, as to carry off sewage, strictly so-called.

Although such results may incidentally take place, it is of no importance if the principal use of the sewer is to do the office which sewers are called upon to do. It is not material that the commissioners have planned too large a sewer, if that be the fact. That must be corrected, if at all, in another way. We are only concerned with the provisions and objects of the law.

So, we are brought to the question whether, in fact, this act is one providing for the drainage of swamps and low lands, or for the construction of a conduit to receive the sewage of a large extent of territory actually and potentially the residence of great numbers of people.

The act itself purports to provide for the construction of a sewer in a city and upon adjoining territory, a thing clearly within the power of the Legislature. If we are bound by the title and provisions of the act there can be no doubt that it is constitutional, and I do not see how any question can arise upon it.

Just how far the courts may go behind the ostensible purpose of an act as shown upon its face and examine into its effects and mode of execution to enable them to declare its unconstitutionality seems

to be a little doubtful. In *Waterloo W. Mfg. Co.* v. *Shanahan* (128 N. Y. 345) it was held that in deciding these questions the scrutiny which the court might exercise was confined to matters appearing on the face of the bill and to things which were the subject of judicial notice. When the purpose of the bill was one within the power of the Legislature to compass and the means used were appropriate for that purpose and not forbidden, it was held that a court was not at liberty to take testimony to show that the real effect of the bill was to do something different, and for that reason hold the bill to be unconstitutional. Within that rule there is no reason here to say that the law is not valid. It is passed to accomplish a thing which is within the power of the Legislature and which may lawfully be done by a local act, if we are to accept the bill itself as containing the true statement of its object.

But if that be not so, and we are to examine the testimony to ascertain whether or not the purpose which the law will in fact accomplish, be within the power of the Legislature by local act, what do we find?

We find that Deep Hollow creek, so called, is a small stream, taking its rise in the town of Gates near the western limits of the city of Rochester, and running through the city to the Genesee river. That portion of the town of Gates lying adjacent to the city, and which naturally drains into the creek, is largely opened up by streets and laid out into building lots, and to a considerable extent thickly settled. The streets so laid out are extensions of the city streets, and, though not improved, are opened.

The creek is an outlet for sewers in the town, from the houses of the people living within the drainage area and from shops and factories, and also for large sewers within the city limits. The population outside the city is quite large and increasing.

There are already within the drainage area of the sewer in the town 325 houses, the sewage from which either does now, or in no great time hereafter will, drain into the creek. The number of acres in the drainage area is 6,544, of which 877 are within the limits of the city and the remainder lie in the town adjoining the city limits. This land is generally high and rolling, but there are scattered through it low and wet spots, some of which are already drained

and improved and some of which are still swampy. The total quantity of low land is between 600 and 700 acres, of which about 100 acres are in the city. This low land lies in detached pieces, part of it already opened up for building lots, both outside and inside the city. It is fair to infer that within no long time this drainage area will be thickly settled. Until that occurs, the sewage and drainage water from the now settled parts of the territory can be carried off in a much smaller sewer than the one proposed. But when this territory shall have been built up, the proposed sewer will be none too large to dispose of the sewage and water which will flow into it.

Considering these facts, it is clear that the principal object of the law is to provide means of disposing of the sewage which now flows out of this territory and that which it is reasonable to expect must be taken care of within a short time. It is quite true that much surface water will flow through it and no doubt many wet spots will be drained by it, but such incidental benefits will not warrant the condemnation of the law. It is to be judged by its practical effect and operation (*Forster* v. *Scott*, 136 N. Y. 577, 584), and so judged is not to be condemned unless it is clear and plain that some provision of the Constitution has been violated. (*People ex rel. Carter* v. *Rice*, 135 N. Y. 473, 484.) Indeed, it is just as necessary that a sewer should carry off surface water from the streets and low places as that it should take away the sewage.

Upon all the facts it seems to me that it would be a flagrant abuse of the power of the court to hold that this law was not within the power of the Legislature to enact.

It is further objected that the act is unconstitutional because it does not provide for the payment of a compensation for the land taken. The statute (§ 6) prescribes that if the commissioners cannot agree with the owners they may proceed under the Condemnation Law. This reference to the general law by way of prescribing the mode of condemning land is not objectionable. (*People ex rel. Comrs.* v. *Banks*, 67 N. Y. 568.) The Condemnation Act provides not only the manner of procedure to appraise the damages, but it directs the form of the final order, which is that " upon payment of such compensation " the plaintiff shall be entitled to enter upon the land, etc. (Civil Code, § 3371.) No lands can be taken unless this is done.

It is true that the commissioners are authorized to issue certificates in payment for lands (§ 11), but no owner is required to accept them. He may if he choose rely on the direction of the final order in the proceedings and insist upon his money before his land is actually taken.

Upon the whole case the plaintiffs are entitled to an order appointing commissioners to appraise the lands of the defendants.