## PEOPLE ex rel. MITCHELL v. STURGES.

(Supreme Court, Appellate Division, Third Department. March 2, 1898.)

1. CONSTITUTIONAL LAW—PUBLIC OFFICERS—APPOINTMENT.
    Laws 1895, c. 247, § 4, authorizing the board of trustees of the village of Saratoga to "elect" a president, does not violate Const. art. 10, § 2, authorizing the legislature to give the power of "appointment" to such village authorities as it shall designate.

2. SAME—DECLARING AND FILLING VACANCIES.
    Laws 1895, c. 247, § 4, providing that the term of office of the present president of the village of Saratoga shall become vacant upon the appointment of another, does not violate Const. art. 10, §§ 5, 7, 8, empowering the legislature to declare when an office is vacant and how it shall be filled.

3. SAME—DUE PROCESS OF LAW.
    Nor does it violate Const. art. 1, § 1, forbidding the deprivation of a right or privilege, "unless by the law of the land," though the president's term of office is shortened.

Appeal from supreme court, special term, Saratoga county.

Quo warranto, on the relation of Caleb W. Mitchell, against Charles H. Sturges. From a judgment dismissing the complaint on the merits (47 N. Y. Supp. 999), plaintiff appeals. Affirmed.

The action was in the nature of a quo warranto for the purpose of ousting the defendant from the office of president of the village of Saratoga Springs, and declaring the relator entitled thereto. In March, 1894, the relator, under a statute then in force, was elected for a term of two years to the office of president of the village of Saratoga Springs. He qualified, entered upon, and continued to discharge the duties of the office until the first Monday of May, 1895, when the board of trustees of the village, acting in pursuance of and in conformity with section 4, c. 247, Laws 1895, "elected" the defendant to the same office, and he, to the exclusion of the relator, took, and since has retained, possession of the office, and discharged the duties relating to it.

That portion of the act of 1895, so far as it relates to the question here involved, provides that: "The board of trustees shall, upon the first Monday in May in the year 1895, and upon the first Monday in April in each odd numbered year thereafter, assemble at the place provided for the meeting of the board of trustees in said village and shall proceed to elect some suitable person * * * to the office of president of the village; and the president so elected shall hold his office for two years and until his successor is duly chosen and qualified. * * * Upon the election of a president of the village, pursuant to this section, the term of office of the present president shall cease and determine."

The relator insists that this statute is void, in that it violates certain sections of the constitution of the state of New York: (1) That it violates section 1, art. 1, which guaranties that one shall not be deprived of a right or privilege "unless by the law of the land or the judgment of his peers." (2) That it violates sections 5, 7, 8, art. 10, in relation to the creation of and filling vacancies in offices, in that it provides for the selection of an incumbent for an office not vacant at the time the selection is made. (3) That it violates section 2, art. 10, which provides that "all city, town and village officers whose election or appointment is not provided for by this constitution shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose."

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

Charles Haldane, for appellant.

A. W. Shepherd and C. H. Sturges, for respondent.

LANDON, J. The officer in question is one "whose election or appointment is not provided for by this [the] constitution," and

therefore he may be elected by the electors of the village, or appointed by such authorities thereof as the legislature shall designate for the purpose. Const. art. 10, § 2. The appellant urges that section 4 of the act of 1895, in providing that the board of trustees "shall proceed to elect" such officer, violates this section of the constitution conferring the power of election upon the electors of the village. But it is evident that in this case, as in Sturgis v. Spofford, 45 N. Y. 446, the word "elect" was used by the legislature in the sense of "appoint." The seventh section of this act amending section 22 of the village charter indicates such sense. It says:

"The board of trustees shall have power to remove any officer of their appointment, except the president of the village."

As the legislature had the power to provide that the president of the village should be elected by the electors of the village, or appointed by such authorities thereof as they should designate, it had the power to change from one method to the other in its discretion.

Section 3, art. 10, of the constitution declares:

"When the duration of any office is not provided by this constitution, it may be declared by law, and if not so declared, such office shall be held during the pleasure of the authority making the appointment."

Plainly, "duration of any office" includes the term of the incumbent. The law which declared the term of the incumbent of this office to be two years could be altered so as to shorten the length of the term of any incumbent. People v. McKinney, 52 N. Y. 374; Long v. Mayor, etc., 81 N. Y. 425; People v. Whitlock, 92 N. Y. 191; Koch v. City of New York, 152 N. Y. 75, 46 N. E. 170. This being so, this act, which shortened the term of the relator, but not of his successors, does not seem to be open to the objection that the constitutional provision was violated. Whether it was narrowly or ungenerously and harshly observed presents no judicial question.

Section 8, art. 10, of the constitution declares:

"The legislature may declare the cases in which any office shall be deemed vacant, when no provision is made for that purpose in this constitution."

Section 5:

"The legislature may provide for filling vacancies in office."

It is no doubt true that these affirmative provisions are the denial to the legislature of all power over the subject-matter inconsistent with them, and in this sense they are limitations upon the legislative power. But I fail to see how this aids the relator. The legislature, in the enactment of the statute here challenged, kept strictly within these provisions. It declared (1) when the office should be deemed vacant; (2) how the vacancy should be filled. The constitution is silent respecting the order of these events. Since the legislature kept within the constitutional limitations, we cannot impute to that body an intent to violate the spirit of the constitution while observing its forms. If we should suppose that some members of the legislature desired by this statute to take the office away from the relator and give it to the defendant, we would not be justified in imputing that intent to the legislature itself.

In interpreting a statute, we often have recourse to what we term "the legislative intent," meaning thereby the intent as gathered from the act itself, and sometimes considered in the light of our knowledge, in common with the public at large, of well-known conditions which may seem to have led up to it. But such consideration of extraneous facts is not resorted to, to defeat the act, but to aid in its interpretation, except in cases where personal liberty or private property is sacrificed under a false pretense of protecting the public health or morals, or private property is taken under a false pretense that it is for the public use. In such cases a false declaration in the statute of the purpose for which private rights are invaded is not beyond judicial inquiry. See Manufacturing Co. v. Shanahan, 128 N. Y. 345, 28 N. E. 358.

In the case last cited, the court restated and approved in this respect the doctrine of People v. Draper, 15 N. Y. 545, and cited many cases in its support, and reinforced the doctrine by apt and vigorous language of its own. This is the more significant because the latter case was in other respects distinguished, if not discredited, in People v. Albertson, 55 N. Y. 50. Judge Denio, in the Draper Case, said:

"If a particular act of legislation does not conflict with any of the limitations or restraints which have been referred to, it is not in the power of the courts to arrest its execution, however unwise its provisions may be, or whatever the motives may have been which led to its enactment. There is room for much bad legislation and misgovernment within the pale of the constitution, but, whenever this happens, the remedy which the constitution provides, by the opportunity for frequent renewals of the legislative bodies, is far more efficacious than any which can be afforded by the judiciary. The courts cannot impute to the legislature any other than public motives for their acts. If a given act of legislation is not forbidden by express words or by necessary implication, the judges cannot listen to a suggestion that the professed motives for passing it are not the real ones. If the act can be upheld upon any views of necessity or public expediency which the legislature may have entertained, the law cannot be challenged in the courts."

It may be remarked of People v. Albertson, supra, that it took from the electors or the authorities of the city of Troy the power to elect or appoint the commissioners of police for that city, and vested the power of appointment in the governor. Here, the act simply substitutes appointment by one of the authorities of the village in place of the election by the electors thereof. There the mandate of section 2, art. 10, of the constitution was evaded; here it is observed.

We must assume that the legislature, in the enactment of this statute, deemed it wise and right to change the statute which made the president of the village of Saratoga Springs elective by the electors of the village, and to replace it by a statute which should vest his appointment in the board of trustees of the village; also, that the legislature deemed it wise and right that the term of the elected president should end with the assumption of the office by the appointed president. To assume that the legislature intended to abuse its powers, to the oppression and injury of the relator, would in this case be, I think, a gratuitous aspersion of that co-ordinate and independent department of the government. If we go outside of the act itself, and the act which it amends, as far as we lawfully can, in search for light upon the intent of the act, we shall find none.

This brings us to the main point of the relator's argument. It is based upon the assumption that the statute (section 4, c. 247, Laws 1895) above quoted, under which his term of office was shortened and himself displaced from the office of president of the village, and the defendant elected or appointed in his stead, was directed against him, and not towards a change in the office itself, and hence that the legislature exceeded its powers, either by assuming a judicial function,—that is, of rendering judgment of ouster against him,—or by depriving him of due process of law, by which only such judgment could be pronounced. The preceding discussion answers this contention. We cannot assume that the legislation was directed against the officer, and not to the office. The relator had the right to hold the office of president of the village for the two years for which he was elected to it by the electors, no other cause for its earlier termination or vacation existing, unless the legislature should by statute shorten the term for which he was elected. This the legislature had the right to do, and did do, by the act in question. His term of office, therefore, ceased when the defendant's term began. The legislature exercised legislative, and not judicial, power. It deprived the relator of no right, since his right to remain in the office was dependent upon the exercise of the legislative power to shorten the term; and, since the term of the office was thus shortened, due process of law could not be invoked to prolong it, or to protect the relator's right to it from expiring.

The judgment should be affirmed, with costs. All concur, except HERRICK, J., not voting.