PEOPLE ex rel. WARD v. SCHEU.

(Supreme Court, Appellate Division, Fourth Department.    April 2, 1901.)

1. PUBLIC OFFICERS—ELECTIONS—VACANCIES—APPOINTMENT.

Const. art. 10, § 5, providing that in cases of elective offices no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy, applies only to offices created by the constitution, and not to those created by the legislature; hence Buffalo city charter (Laws 1891, c. 105, § 271), declaring that a vacancy in the office of an elected commissioner of public works shall be filled by appointment by the mayor, and that the term of the appointee shall last until the 1st day of January after the next municipal election, at which election a commissioner shall be elected, is not in contravention of the constitution.

2. SAME—CONSTITUTIONAL LAW.

Const. art. 12, § 3, providing that all elections of city officers, "except to fill vacancies," shall be held on the Tuesday succeeding the first Mon-

day of November in an odd-numbered year, is not mandatory, in the sense that it compels an election to fill a vacancy to be held at the next election thereafter, and hence was not contravened by the Buffalo city charter (Laws 1891, c. 105, § 271), providing that a vacancy in the office of an elected commissioner of public works shall be filled by appointment by the mayor until the 1st day of January after the next municipal election, at which election a commissioner shall be elected.

**8. SAME—MUNICIPAL ELECTIONS.**

Buffalo city charter (Laws 1891, c. 105, § 271) provides that a vacancy in the office of an elected commissioner of public works shall be filled by appointment by the mayor, and that the term of the appointee shall last until the 1st day of January after "the next municipal election." Section 370, as amended by Laws 1895, c. 805, declares that "municipal elections" shall be held on the Tuesday succeeding the first Monday in November in each odd-numbered year. *Held,* that the general election of 1900 was not a "municipal election," within the meaning of the term as used in said section 271, merely because certain municipal officers were elected at that election to fill vacancies, but that it was the intention of the law to preserve the distinction between general elections and municipal elections, and hence a vacancy in the office of an elected commissioner of public works could not be filled at such general election.

Appeal from special term, Erie county.

Quo warranto by the people, on relation of Francis G. Ward, against Augustus F. Scheu, to determine the title to an office. From a judgment ousting defendant, and declaring relator to have been duly elected and entitled to the office, defendant appeals. Reversed.

This is an action in the nature of quo warranto to determine the title to the office of the elected commissioner of public works of the city of Buffalo, N. Y. The city charter provides for a board of commissioners consisting of three members, two of whom are appointed by the mayor, and the third is elected by the qualified electors of the city. At the municipal election held in the year 1897 one Martin Maher was elected to this office for the full term of four years, and in due time he entered upon the discharge of his official duties, and continued therein until August 1, 1900, when he died. Thereafter, and on the 24th day of September following, the defendant, Augustus Scheu, was appointed by the mayor to fill the vacancy created by the death of Maher; and in the certificate of such appointment it was declared that the same was "to take effect to-day, and to continue until the first day of January after the municipal election, to wit, until January 1, 1902," which period embraced the entire unexpired official term of Mr. Maher. Upon being notified of his appointment, the defendant duly qualified and entered upon the discharge of his duties as such commissioner. At the general election held on the 6th day of November, 1900, candidates for three municipal offices of the city of Buffalo, viz. an elected commissioner of public works, a justice of the peace, and a councilman, were voted for to fill vacancies which had been caused by either death or resignation; and the relator, having been placed in nomination by the Republican party for the office first above mentioned, received upwards of 35,000 votes out of a total of 36,414 votes cast for that office, and upon the election thus held he bases his claim to the office in question. Proceeding upon the theory that the vacancies which had theretofore existed in the office of commissioner of public works and councilman had been filled by appointment by the mayor, and that the terms of the respective appointees did not expire until January 1, 1902, no opposing candidates for these two offices were nominated by the Democratic party; but for the office of justice of the peace each party placed a candidate in nomination, and the Republican candidate, having received a majority of nearly 5,000 out of a total vote of about 68,000, was declared duly elected. After the election the relator, Ward, took the oath of office, filed his official bond, and demanded of the defendant possession of the office to which he claimed to have been elected; and, such demand being refused, this action was brought. Upon the trial a verdict was

directed in favor of the relator, and from the judgment of ouster thereafter entered the present appeal was brought.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

W. H. Cuddeback, for appellant.
Simon Fleischmann, for respondent.

ADAMS, P. J. It is provided by section 5 of article 10 of the constitution of this state "that the legislature shall provide for filling vacancies in office, and in case of elective offices no person appointed to fill a vacancy shall hold his office by virtue of such appointment longer than the commencement of the political year next succeeding the first annual election after the happening of the vacancy"; and it is contended by the learned counsel for the relator that inasmuch as the attempted extension of the official term of the defendant beyond the 1st day of January, 1901, was obnoxious to this plain mandate of the fundamental law, it was inoperative and void. Upon the part of the defendant it is admitted that this contention is well founded, if the provision above quoted is applicable to the office of commissioner of public works; but at the same time it is insisted that it can have no such application, for the reason that that office is one which was created by the statute, and not by the constitution, and consequently one which is within the control of the legislature. The distinction thus suggested is one which has been frequently recognized by the courts, which hold, upon the one hand, that a constitutional office (that is, one created or provided for by the constitution) cannot be abolished, nor its term extended or abrogated, by the legislature, while, upon the other hand, it seems to be equally well settled that an office created by the statute is wholly within the control of the legislature, which may restrict its tenure or abolish the same altogether, and determine at pleasure the mode of election or appointment thereto, as well as the compensation to be received by the incumbent. People v. Howland, 155 N. Y. 270, 49 N. E. 775; People v. Foley, 148 N. Y. 677, 43 N. E. 171; People v. Keeler, 29 Hun, 175; Conner v. Mayor, etc., of City of New York, 2 Sandf. 355; People v. Sturges, 27 App. Div. 387, 50 N. Y. Supp. 5, affirmed in 156 N. Y. 580, 51 N. E. 295; In re Mayor, etc., of City of New York, 33 App. Div. 365, 53 N. Y. Supp. 875, affirmed in 158 N. Y. 668, 52 N. E. 1125; People v. Whitlock, 92 N. Y. 191; Long v. Mayor, etc., of City of New York, 81 N. Y. 425. As to the latter class of offices the rule has been thus stated:

"The doctrine seems to be well settled, not only in this but nearly all the other states of the Union, that, so far as a legislative office is concerned, unless there be some restriction in the constitution, the legislature may, without abolishing the office before the expiration of the term of the incumbent, shorten his term or legislate him out of office." People v. Sturges, supra.

Offices belonging to the first-mentioned class, and which, as contradistinguished from legislative or statutory offices, are denominated "constitutional," are, generally speaking, such as are governmental in their nature,—as, for example, the executive, judicial, or legisla-

tive offices of the state, or any political division thereof. All these are either created by or provided for in the constitution, while such offices as are designed for the administration of the affairs of municipalities are ordinarily created by the legislature. The office of the justice of the peace belongs to the former class. Const. art. 6, § 17. And it seems to have been conceded upon all sides that for this reason the method of filling the vacancy which existed in that office in the city of Buffalo in the year 1900 was the one provided by section 5 of article 10, above quoted. As a consequence, both parties, as we have seen, placed a candidate in nomination for that office at the "first annual election after the happening of the vacancy." It has also been held by this court that the office of supervisor may be thus classified. People v. Board of Sup'rs of Erie Co., 42 App. Div. 510, 59 N. Y. Supp. 476, affirmed in 160 N. Y. 687, 55 N. E. 1099. The office of commissioner of public works, however, belongs to the latter class, for it is one purely local in its nature, and one which was created by the legislature for the obvious purpose of administering the affairs pertaining to a particular department of a municipality; and, this being the case, it follows, within the rule to which reference has been made, that the power of legislature to regulate its tenure, and declare when and how a vacancy therein shall be filled, is in no wise restricted by provisions of the constitution, which, as respects an office within the former class, would be the paramount law.

In our consideration of the case thus far, we have confined our discussion to the effect and meaning which should be given to section 5 of article 10, which was incorporated into the constitution of 1894 in the precise language of the preceding constitution. Our attention, however, is directed to section 3 of article 12, which provides that:

"All elections of city officers, including supervisors and judicial officers of inferior courts elected in any city * * * except to fill vacancies, shall be held on the Tuesday succeeding the first Monday of November in an odd numbered year."

This provision is new, and it is contended by the learned counsel for the relator that its manifest purpose is to require all vacancies to be filled by election at the first annual election after the happening thereof; but we find ourselves unable to concur in this view. There is nothing mandatory in this section, so far as the filling of vacancies is concerned; and it neither enlarges nor restricts the right of the legislature, under section 5 of article 10, to determine the time for filling vacancies in municipal offices. Indeed, the only portion of the section which is susceptible of the construction given to it by the learned counsel is that which requires all city officers to be elected in odd-numbered years. The exception as to vacancies is permissive merely, and leaves it optional with the legislature to determine when they shall be filled,—subject, of course, to the power conferred and restrictions contained in section 5 of article 10, which, as we have seen, applies to constitutional offices only.

We come, therefore, to the consideration of the real question in this case, and the one which requires us to ascertain what, if any,

provision has been made by the legislature for filling a vacancy in the particular office the title to which is in dispute in this action. By the charter of the city of Buffalo (Laws 1891, c. 105, § 271), it is required that "a vacancy in the office of an elected commissioner [of public works] shall be filled by appointment by the mayor until the first day of January after the next municipal election, at which election a commissioner shall be elected to fill the unexpired term of the elected commissioner whose office became vacant"; and by the 370th section of the same act (as amended by Laws 1895, c. 805) it is further provided that municipal elections "shall be held on the Tuesday succeeding the first Monday in November in each odd numbered year." This language is certainly quite plain and free from anything which savors of ambiguity, for it expressly directs that a vacancy in the office of elected commissioner of public works shall. be filled by appointment until the 1st day of January succeeding the next municipal election, which must be held in an odd-numbered year. Indeed, we do not understand that any other construction than this is contended for; but it is insisted that this provision is in contravention of section 5 of article 10 of the constitution, and, furthermore, that the general election of 1900 was a "municipal election," within the meaning of that term as used in section 271 of the charter, for the reason that three municipal officers were voted for at that time. We have already shown, as we believe, that the first of these contentions is not tenable, because the office to which the relator claims to have been elected is statutory and not constitutional in its nature, and we think the fallacy of the second is quite as susceptible of demonstration. It is now the settled policy of the law in this state to divorce, as completely as possible, municipal from general elections. That was manifestly the main object in requiring the former to be held in odd-numbered years; and because, under the requirements of the constitution, a vacancy in an office which happens to be both constitutional and municipal in its character may be filled at an election in an even-numbered year, it by no means follows that the general character of the election is thereby transformed. A municipal official is then elected, it is true; but the election still remains general, and not municipal, in its character. Any other construction than this would produce great confusion, and tend to defeat the very result which the framers of the constitution sought to accomplish. Moreover, it is not difficult to see how it might enable a candidate for a municipal office to take advantage of national and state issues, and thereby secure his election, whereas, if the issues were confined to those which were purely local in their nature, his party might be held responsible for municipal conditions which would insure his defeat. In this connection it may be proper to advert briefly to a recent amendment to the city charter (Laws 1895, c. 805), which it is claimed supports the contention of the learned counsel for the relator that the terms "annual election" and "municipal election" are interchangeable, and that the former is synonymous with "general election." Section 1 of this amendatory act relates to the election of councilmen, and reads as follows, viz.:

"Three councilmen shall be elected at the municipal election held in the year eighteen hundred and ninety-five. Six councilmen shall be elected at the municipal election in the year eighteen hundred and ninety-seven. * * * At the annual election held in each odd numbered year thereafter there shall be elected alternately five and four councilmen, respectively, for the term of four years."

This, we believe, is the only instance in which the term "annual election" is employed; and when the section is read in connection with section 2, which provides that "at the municipal election held in each odd numbered year an alderman shall be elected in each ward, except in the year eighteen hundred and ninety-five, when aldermen shall be elected only in the wards in which aldermen were not elected at the general election held in the year eighteen hundred and ninety-four," it is apparent, we think, that, so far as the expression of any legislative intent may be gathered from this enactment, it tends to strengthen the contention of the defendant that a municipal election, although spoken of as an "annual election," is clearly distinguishable from a general election. It may be that it would be better policy to fill vacancies in statutory as well as constitutional offices at the first election after the happening of the vacancy, but as yet the legislature has not so declared,—at least, so far as the city of Buffalo is concerned; and, until the charter of that city is so amended as to give expression to such policy, we must construe it as we find it. The result of these views is that the judgment appealed from should be reversed, and this necessarily establishes the defendant's title to the office in question.

Judgment reversed and complaint dismissed, with costs. All concur, except LAUGHLIN, J., not voting.