provided that all elective officers of the city in office when the act took effect should hold office until the expiration of their terms, and until their successors should be elected and qualified, and provided that the term of office of the recorder, city judge, and justice of the peace first thereafter elected should commence in March, 1899, and should terminate January 1, 1904. *Held* that, though the general provision limited the terms of such officers to four years, it was competent for the Legislature to provide that the first officers elected after the amendment should hold office for a longer period, and hence persons elected to such offices in November, 1902, were not entitled thereto.

2. SAME.

Const. art. 6, § 17, providing that towns may elect justices of the peace, whose office shall be four years, but that justices of the peace may be elected in the different cities for such terms as shall be prescribed by law, did not prevent the Legislature, in amending Auburn City Charter by Laws 1896, p. 641, c. 520, from providing that the first justice of the peace elected thereafter should hold his office for four years and nine months.

3. SAME—STATUTES—TITLE.

Laws 1896, p. 641, c. 520, entitled "An act to amend chapter 53 of the Laws of 1879, entitled 'An act to revise the charter of the city of Auburn,' and the several acts amendatory thereof and supplemental thereto, to change the time of holding charter elections in said city, and to provide for the tenure of office of the officers of said city and of the several wards therein," was not obnoxious to Const. art. 3, § 16, requiring all local bills to embrace but one subject, which shall be expressed in its title; the subject of the act being the revision of the charter of the city of Auburn, and all its provisions being germane thereto.

4. SAME—NOTICE OF ELECTION—CITY CLERK—POWERS.

Under Auburn City Charter, providing that the city clerk shall state in his notice of election the officers to be elected at any election, as provided by law, the clerk had no power to determine the year in which the election of such officers should take place, and an incorrect statement by him of the officers to be elected in a particular year was ineffective to validate an unauthorized election.

5. SAME—COMMENCEMENT OF TERM.

Under Public Officers' Law, art. 1, § 4 (Laws 1892, p. 1657, c. 681), providing that the term of office of an elective officer, unless elected to fill a vacancy, shall commence on the 1st day of January next after his election, if the commencement thereof be not otherwise fixed by law, when the commencement of an officer's term is fixed by law, elections to such office must take place at the last election held before the time such term commences.

Submission of controversy as to title to office by the people of the state of New York, on relation of Frank J. Stupp and others, against the city of Auburn and others. Judgment for defendants.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

John Cunneen, Atty. Gen., for the People.
Teller & Hunt, for relator Stupp.
Robert L. Drummond, for relator Drummond.
Charles T. Wheelan, pro se.
Frank S. Coburn, for respondent Kent.
James W. Hart, pro se.
Laverne A. Pierce, for respondents city and common council.

WILLIAMS, J. Nathan Kent is entitled to hold the office of recorder; James W. Hart, the office of city judge; and William S. Elder,

the office of justice of the peace—until January 1, 1904. Frank J. Stupp, Richard C. Steele Drummond, and Charles F. Wheelan claim to be entitled to hold these offices, respectively, from January 1, 1903, by virtue of their election thereto in November, 1902. The real question in controversy is when the terms of office of Kent, Hart, and Elder expire—at the close of the year 1902 or 1903? If the terms expired at the close of 1902, then Stupp, Drummond, and Wheelan were properly elected in November, 1902, and were entitled to take the office January 1, 1903. If the terms do not expire until the close of 1903, then the new incumbents were improperly elected in November, 1902, cannot be so elected until November, 1903, and the old incumbents are entitled to hold the offices until January 1, 1904.

Prior to 1896 the charter election in the city of Auburn was held in March of each year, and the terms of office of the city officers commenced on the Monday following such election. Sections 6, 17, c. 53, pp. 73, 75, Laws 1879. The terms of office of the recorder, city judge, and justice of the peace were four years. Section 5. In 1896 a change in the time of holding the charter election was made, from spring to fall, and the terms of office were to commence on the 1st day of January thereafter. Sections 6 and 17, as amended by chapter 520, p. 641, Laws 1896. The terms of these offices in question were left the same as before section 5 of the act of 1896. These changes rendered some specific provisions necessary for the commencement of this new order of things. Accordingly section 6 of the act of 1896 provided that the first charter election under this amended act should take place in November, 1896, and section 12 provided that all elective officers of the city in office when the act took effect should hold office until the expiration of the terms for which they had been elected, respectively, and until their successors should be elected and qualified. The same section provided that at the charter election held under the provisions of the act in November, 1898, there should be elected a recorder, city judge, and justice of the peace, whose terms of office should commence in March, 1899, upon the expiration of the terms of the respective officers whom they were elected to succeed, and should terminate January 1, 1904. At the charter election held in November, 1898, under this act of 1896, Kent, Hart, and Elder were elected to these offices, respectively; and, under the express and literal provisions of section 12, their terms of office expire January 1, 1904. While the general provision as to their terms of these offices was four years, manifestly the first term under the act, when the change for the time of the charter election and for the commencement of the terms was being made, could not be just four years, but must be either less or more than four years. If such first terms were made to terminate January, 1903, they would be about three years nine months. If they were made to terminate January, 1904, they would be about four years nine months. The Legislature saw fit to make the terms more, instead of less, than four years. This provision was not inconsistent with the general one in section 5 making the terms of these offices four years, nor was any construction given to the provisions of section 12 by the act of 1899, p. 749, c. 348, when the provision of section 5 of the act of 1896 as to the terms of these offices

was left unchanged—four years. The provisions of section 12 would be equally as inconsistent with section 5 of both acts if the first term had been made to terminate in January, 1903, and thus made three years eight months, instead of four years. The provisions, all read together, are in harmony, and neither need be set aside in view of the other. It is said that the intent of the Legislature should control, and that there was evidently a clerical error in providing that the expiration of the first terms should be in January, 1904, rather than January, 1903. We see no adequate reason for saying that any mistake was made, or that the Legislature did not intend what it expressly and literally provided in the statute. There can be no doubt of the power of the Legislature to so provide for the length of the first term of these offices under this act of 1896. By section 17, art. 6, of the state Constitution, it is provided that towns may elect justices of the peace, whose term of office shall be four years; but it is also provided in the same section that justices of the peace may be elected in the different cities for such terms as shall be prescribed by law. Recorders and city judges in cities are not provided for in the Constitution, and therefore their terms of office are within the control of the Legislature. People ex rel Ward v. Scheu, 60 App. Div. 592, 69 N. Y. Supp. 597, and cases therein referred to.

The act of 1896 is not obnoxious to article 3, § 16, of the state Constitution, which provides that private or local bills shall embrace but one subject, and that shall be expressed in the title. The act of 1896 related wholly to a revision of the charter of the city of Auburn. The title expressed this subject, and it was unnecessary that it should contain anything further, to cover all that the act contained. What followed was merely explanatory, and was not contradictory or misleading. It is well settled that, "where the title of a local law expresses a general purpose or object, all matters fairly or reasonably connected therewith, and all measures which will or may facilitate the accomplishment of such purpose or object, are properly incorporated into the act, and are germane to the title." People ex rel. Village of Brockport v. Sutphin, 166 N. Y. 163, 172, 59 N. E. 770, and cases therein referred to.

These city officers could not be elected in November, 1902, if their terms did not commence until January, 1904. The statute gave the city clerk no power to determine the year in which their election should take place, nor had he any such power in the absence of statutory provision relating thereto. His only duty was to state in his notice the officers to be elected at any election as provided by law. An incorrect statement by him would have no effect whatever in rendering an election valid which the law did not authorize. Section 4 of article 1 of the Public Officers Law (Laws 1892, p. 1657, c. 681) provides that "the term of office of an elective officer, unless elected to fill a vacancy, shall commence on the first day of January next after his election, if the commencement thereof be not otherwise fixed by law." When the commencement of the term is fixed by law, it seems to follow that the election to the office should take place at the last election held before the time such term commences. Any other conclusion would be unreasonable, and would lead to serious results. If

the clerk could designate any other year, he could designate one no matter how remote from the time of the commencement of the term. The policy of the law is better served by holding that the electors should select the persons to hold the offices at a time just prior to the commencement of the term.

It is suggested that if a mistake was made as to the year in which these officers were to be elected, and the mistake was not discovered until the election was over and the result declared, the election should still be regarded as valid, though the terms of office did not commence until more than a year after the election, and that the incumbents, Kent, Hart, and Elder, should be held to be estopped from alleging the invalidity of the election in 1902, and to have waived their right to hold their offices after January 1, 1903. We cannot concur in such a view. We do not think the election of Stupp, Drummond, and Wheelan in November, 1902, can be regarded as valid, because of mistake, estoppel, waiver, or for any other reason. The present incumbents hold their offices until January 1, 1904. Their successors must be elected at the election in November, 1903. It is important that there should be no further doubt as to the persons legally entitled to hold these judicial offices. There should be an election of officers this year to fill these offices, about which there can be no further controversy.

Judgment upon the submission should be ordered in accordance with the views hereinbefore expressed; the form of the order to be settled before Justice WILLIAMS on ten days' notice. No costs are asked for in the submission, and none will, therefore, be allowed. All concur.