CITY OF ROCHESTER v. GRAY, Com'r of Highways.

(Supreme Court, Appellate Division, Fourth Department.   July 6, 1909.)

1. STATUTES (§ 97*)—LOCAL LAWS—HIGHWAYS—REGULATION.
Laws 1895, p. 2067, c. 1018, authorizing the Rochester water commissioners to close a highway on the shore of a lake to improve the city's water supply taken therefrom without the consent of the highway commission of the town in which the highway was located, did not violate Const. art. 3, § 18, prohibiting the passage of private or local laws altering or discontinuing highways.
[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 108; Dec. Dig. § 97.*]

2. STATUTES (§ 123*)—TITLE—OBJECTS.
Laws 1895, p. 2067, c. 1018, providing for the appointment of water commissioners for the city of Rochester, and authorizing them to acquire the shore of Hemlock Lake to prevent the pollution of the city's water supply, was not violative of Const. art. 3, § 16, in so far as it authorized the changing of location of highways bordering the lake, as embracing more than one subject; the changing of highways being merely incidental to the main purpose of the act.
[Ed. Note.—For other cases, see Statutes, Dec. Dig. § 123.*]

3. HIGHWAYS (§ 81*)—DISCONTINUANCE—EFFECT.
On the discontinuance of a highway over land owned in fee by a city, the city became entitled to the use and possession of the land without any right in any one to damages.
[Ed. Note.—For other cases, see Highways, Cent. Dig. § 289; Dec. Dig. § 81.*]

4. HIGHWAYS (§ 78*)—DISCONTINUANCE—RIGHTS OF TOWN.
A highway constructed over land belonging to a city belonged to the state, and not to the town in which the highway was located, and hence the town was entitled to no damages on its discontinuance.
[Ed. Note.—For other cases, see Highways, Dec. Dig. § 78.*]

5. HIGHWAYS (§ 18*)—OWNERSHIP—TRUST.
Highways belong to the state in trust for the people at large.
[Ed. Note.—For other cases, see Highways, Dec. Dig. § 18.*]

6. CONSTITUTIONAL LAW (§ 291*)—STATUTES—DISCONTINUANCE OF HIGHWAY—DUE PROCESS OF LAW.
Laws 1895, p. 2067, c. 1018, empowering Rochester highway commissioners to close a highway on the shore of a lake to improve the city's water supply, and to construct another highway in place thereof, was not violative of Const. art. 1, § 6, as depriving the people of their property without due process of law.
[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 291.*]

7. HIGHWAYS (§ 95*)—AUTHORITY OF COMMISSIONER.
Where a discontinued highway connected different parts of the town, but did not afford means of access to a lake, the highway commissioner had supervision thereof not as a means of access to the lake, with which as a highway he had nothing to do, but only as connecting different parts of the town.
[Ed. Note.—For other cases, see Highways, Dec. Dig. § 95.*]

Appeal from Special Term, Livingstone County.

Suit by the City of Rochester against Patrick J. Gray, as commissioner of highways of the town of Livonia, to restrain defendant from entering on land at the foot of Hemlock Lake formerly used as a highway, and opening the highway to public travel.   From a judg-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ment dismissing the complaint (60 Misc. Rep. 591, 112 N. Y. Supp. 774), plaintiff appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

W. W. Webb and B. B. Cunningham, for appellant.

Edwin A. Nash, for respondent.

WILLIAMS, J. The judgment should be reversed and a new trial granted, with costs to the appellant to abide event.

The action was brought to restrain the commissioner of highways from doing work upon what he claimed was a highway of his town. The city claimed the highway had been legally discontinued and that the commissioner was attempting to reopen it. The highway was closed under the provision of chapter 1018, p. 2067, Laws 1895, authorizing the appointment by the Supreme Court of three commissioners to acquire for the use of the city of Rochester, the shore of Hemlock Lake, or so much thereof within 200 feet of the water line as they should determine was necessary to prevent the pollution of the water supply of the city. By section 2 of the act it was provided:

"If it shall be necessary for the purposes of this act, such commissioners may take any highway or portion of a highway within the limits described in section 1 (200 feet of water line) but they shall reconstruct any such highway in a manner satisfactory to the highway commissioner of the town in which it is located, and so as not to materially interfere with the public travel, and may acquire the necessary land therefor, by agreement with the owners thereof, or if unable so to agree, by condemnation."

The commissioners were duly appointed and entered upon the performance of their duties under the act. Among other things they determined pursuant to section 2 of the act that it was necessary to take the highway in question, which ran along the water's edge. They therefore took the highway and purchased land further back from the shore, and reconstructed the highway thereon. They reconstructed the highway in a first-class manner, better than the one taken, and it was approved as to its manner of construction by the commissioner of highways, but he did not consent to the taking of the old highway or the construction of the new one. In fact, the commissioner proceeded in accordance with the terms of the act of 1895.

First. The question is whether the Legislature had power to authorize the change of highway without the consent of the commissioner of highways of the town, in view of section 18 of article 3 of the Constitution of the state, which among other things provided that the Legislature should not pass any private or local bill laying out, opening, altering, working, or discontinuing roads, highways or alleys, or for draining swamps or other lowlands. The trial court held that the Act of 1895, in so far as it authorized the taking and reconstructing of the highway in question, was unconstitutional, and on that ground dismissed plaintiff's complaint. I do not think the decision can be upheld upon the ground stated in the opinion of the trial court. Only one case was cited to sustain his view, and that seems not to afford much support, viz.: Swikehard v. Michels, 8 Misc. Rep. 568, 29 N. Y. Supp. 777, affirmed 81 Hun, 325, 29 N.

Y. Supp. 777; 30 N. Y. Supp. 1135, and 144 N. Y. 684, 39 N. E. 859,·on opinion of the judge who tried the case. I suppose the law is that when the real object of the statute is not the change of highways, but such change is merely an incident to the accomplishment of some public improvement or purpose for which the law was passed, then any change in highways which may become necessary in furtherance of the main purpose is not prohibited by this provision of the Constitution. The provision was designed to prevent the passage of acts which had for their primary object the change of highways. Several acts have been passed for the benefit of New York City to furnish and increase its water supply and for park purposes which are in substantially the same form as the one we are considering, and which involves the taking of highways and constructing new ones in their place, and, if this act is in violation of the Constitution, those acts are also, and yet great improvements have been and are being made under them, and roads discontinued and new ones constructed in their places, the same as this road has been taken and a new one constructed. The question does not appear often to have been raised or considered by the courts.

In Matter of Gilroy, 43 App. Div. 359, 60 N. Y. Supp. 200, affirmed 164 N. Y. 576, 58 N. E. 1087, highways of considerable length were taken and new ones opened in their place in the construction of a reservoir. No claim was made that the act under which this was done was unconstitutional. The main question involved related to the maintenance of the new highways, whether it should be by the city of New York or the town in which they were located. The case above referred to—Swikehard v. Michels—involved the same constitutional provision as this case does, only it related to the draining of swamps and lowlands. The main purpose of the act there was the construction of a sewer in certain wards of the city of Rochester and the town of Gates, adjoining. That was necessary for the public health, and was a public purpose. The act was a local and private one within the words used in the Constitution, and was claimed therefore to be unconstitutional because it practically provided for the drainage of swamps and lowlands. The construction of the sewer would, in fact, drain swamps and lowlands. The opinion then stated that a local bill that has for its sole or main purpose the draining of swamps or lowlands, although required for the public health, might be unconstitutional (though this would be open to argument if necessary to deny it in this case), but where the construction of a sewer, required to preserve the public health, becomes necessary, the fact that more or less water is drawn from a low piece of ground does not render the act unconstitutional which provides for the construction of the sewer. The title of the act purported to provide for the construction of a sewer, which was clearly within the power of the Legislature, and the question was whether its real purpose was correctly stated in the title, or whether its real purpose was the drainage of the swamps and lowlands. It was apparent that the real purpose was correctly stated in the title of the act, and therefore it was constitutional, though, in effect, the sewer would drain swamps and lowlands. The opinion did discuss the question whether the court would go beyond the language of the act to ascertain the real purpose

thereof, but, when the real purpose was ascertained to be a legitimate one, the fact that other things would result that were merely incidental to the main purpose would not render the act unconstitutional. In the present case there can be no doubt as to the real purpose of the act. It was to protect public health and prevent pollution of the source of water supply of the city of Rochester. This was a legitimate purpose, and within the power of the Legislature to provide for. The taking of the highways and the reconstruction of these in other localities was merely incidental. It was not certain it would become necessary at all. It was found that it was necessary. This provision did not render the act unconstitutional any more than similar provisions in the acts, affecting the water supply for New York City to which I have referred, rendered those acts unconstitutional. The provision was not designed to cover such changes of highways as were merely incidental to public necessary improvements.

Second. The act is not in violation of section 16 of article 3 of the Constitution in embracing more than one subject not expressed in the title. It had but one object; the changing of highways being merely incidental to the main purpose of the act. People ex rel. Stupp v. Kent, 83 App. Div. 554, 557, 82 N. Y. Supp. 172; People ex rel. Brockport v. Sutphin, 166 N. Y. 163, 59 N. E. 770; Economic P. & C. Co. v. Buffalo, 195 N. Y. 286, 88 N. E. 389. The latter case is clearly distinguishable from this.

Third. It is said that the Legislature had no power to authorize the taking of this highway for the purposes stated in the act, because it belonged to the people, and the statute violated the provision of the Constitution that no person should be deprived of his property without due process of law. Section 6 of article 1. The city of Rochester was owner of the fee of the lands over which the highway taken passed. Upon the discontinuance of the highway, the city became entitled to the use and possession of the land, and no one was therefore entitled to any damages. The town was not because it had no interest as a town in the highway or the land. The highway belonged to the state, and not to the town. People ex rel. v. St. Bd. Tax Com., 174 N. Y. 417, 443, 67 N. E. 69. The state held the highway in trust for the people at large. In People v. Kerr, 27 N. Y. 188, 192, it was said:

"So far as the existing public rights in these streets are concerned, such as the right of passage and travel over them as common highways, a little reflection will show that the Legislature has supreme control over them. When no private interests are involved or invaded, the Legislature may close a highway and relinquish its use by the public, or it may regulate such use or restrict it to peculiar vehicles or to the use of particular motive power. It may change one kind of public use into another so long as the property continues to be devoted to public use. What belongs to the public may be controlled and disposed of any way which the public agents may see fit."

This language was quoted in the Matter of Gilroy (above), and the court held that under this authority it was clear that the Legislature had the power to provide for the closing of the old and the substitution of the new highway without imposing upon the city of New York, for whose benefit the change was made, the expense of maintaining the new highway. It has been held that the Legislature has

power to pass an act closing streets in New York City, and that such act would not be unconstitutional because it did not provide compensation to the owners of adjoining property, where another street is left, giving access to such lands, and that its authority is equally clear to employ such agency as it sees fit, and to prescribe the method of procedure for such a purpose. Fearing v. Irwin, 55 N. Y. 486; Reis v. City of N. Y., 188 N. Y. 69, 80 N. E. 573. This highway ran along the lake shore to connect different parts of the town, and for such purposes the new highway was as good or better than the old one. The lake as a highway still remains, and access to it is not cut off. There are many other means of access to it besides this old highway, which was never designed as a means of access to the lake, and the public have no interest to retain the highway for that purpose. The commissioner of highways of the town had control and supervision of this highway, not as a means of access to the lake, but only as connecting different parts of the town. Such commissioner has nothing to do with the lake as a highway.

I do not think these objections to the validity of the act are well taken.

My conclusion is that the judgment should be reversed.

Judgment reversed and new trial ordered, with costs to appellant to abide the event. All concur.